1839.

Cleveland
v.
Loder.

CLEVELAND vs. LODER & DRAPER.

Where upon an application for the loan of money, it is by the agreement made a condition of the loan, that the borrower shall receive from the lender uncurrent bills at a higher rate than their value in cash or current funds, the loan is usurious.

*Aliter*, where there is no agreement to make the loan in a depreciated currency, but the borrower at his own request, and for his own accommodation merely, receives payment of the loan in bills which are under par at the place where the loan is made.

Where the money loaned was secured by a transfer of stocks, and it was made a condition of the loan that the lender should have the option, to retain the stocks, with the dividends, at the market value of the stock at the time of making the loan, or to receive back his money, with the interest thereon, at the time appointed for its payment; *Held*, that this stipulation for a contingent benefit to the lender beyond the legal interest, in an anticipated rise in the value of the stock, rendered the contract usurious.

Upon a contract for the loan of money, the lender is not at liberty to stipulate even for a contingent benefit beyond the legal rate of interest, if by the terms of the agreement he has the right to demand a repayment of the money lent, with the legal interest thereon, at all events.

THIS was an application to dissolve an injunction upon bill and answer. The facts as admitted by the answer were briefly these : In December, 1837, the complainant being the agent and overseer of a fancy corporation, the name of which, for the time being, was "The New-York and Tuscarora Coal Company," and being the owner of stock in the company, or at least having stock standing in his name on the books of the corporation, he applied to the defendants for a loan of $5000 for six months. The defendants agreed to make him the loan, at the legal rate of interest, upon his note secured by a transfer of 400 shares of stock in the company, and the transfer of a note for $4000 which the complainant held against D. Wilson. It was also a part of the agreement between the parties, that the defendants should have the privilege of taking 200 shares of the stock, in full satisfaction of the loan, at any time before the first of May thereafter. If they elected to take the stock, they were to re-transfer the residue to Cleveland and give up the

May 7.

notes; and if not, he was to pay the money loaned and the interest thereon at the end of the six months; and in default of the payment, the defendants were to have the right to sell so much of the stock as was necessary to pay them, and return the balance of the stock to him, together with Wilson's note. The bill also alleged that it was a part of the agreement that the complainant should receive $1500 of the loan in uncurrent eastern bills, which were then at a discount of two and a half per cent at the brokers, and were not received at par in the banks of New-York where the loan was made. This part of the agreement was denied by the defendants, though they admitted they paid him that amount in uncurrent bills, at his request, as he wanted the money immediately and could not wait until the opening of the banks the next morning. The par value of the stock was $50 a share, and was worth, as the complainant alleged in his bill, $25 a share in cash in the market at the time of the agreement for the loan, and that the parties anticipated a great increase in the value of the stock previous to the first of May, from certain improvements then in progress by the company. The defendants admitted the nominal value of the stock in market, at the time of the loan, was $25; but denied that the market value in cash was so much. The defendants also admitted that certain improvements were in progress, from which the stockholders expected an increase in the value of their stock, but whether it would increase or diminish in value, depended upon future developements; and the defendants were unwilling to take the stock at $25 a share and run the risk.

*S. J. Wilkin & E. Griffin,* for complainant.

*A. L. Jordan,* for the defendants.

THE CHANCELLOR. If it was a part of the agreement for the loan in this case, that the complainant should take uncurrent bills at a higher rate than their actual value, and for more than they were worth to either party in cash or current funds, the loan was usurious; although the com-

plainant intended to impose upon his workmen by paying them in a depreciated currency. But if the facts were as stated in the answer, that the defendants intended and expected to loan him current funds, and that the uncurrent bills were received in lieu thereof by the complainant, for his own accommodation, when they were willing to let him have current money if he would wait until the bank was open, I do not see that the paying him the loan in these eastern bills was a violation either of the letter or the spirit of the usury laws.

The agreement, however, which forms a part of the written contract between the parties in relation to the loan, that the defendants should have the privilege of taking the stock at $25 a share, would render the transaction clearly usurious, according to the English decisions on the subject of usury. It was a stipulation in behalf of the lenders, that they should have the benefit of any rise in the value of the stock beyond the amount of the loan by the first of May, in case the improvements then in progress should result favorably to the stockholders so as to increase the value of the stock; but without subjecting the lenders to the loss, even of the interest on the loan, if the value of the stock was not enhanced so as to make it an object for them to retain it in lieu of the money loaned and the interest thereon. Whenever the lender stipulates even for the chance of an advantage beyond the legal interest the contract is usurious, if he is entitled by the contract to have the money lent with the interest thereon repaid to him at all events. (*Barnard* v. *Young*, 17 *Vesey*, 44. *Chippendale* v. *Thurston*, 4 *Car. & Payne*, 101. *White* v. *Wright*, 3 *Barn. & Cress.* 276. 5 *Dowl. & Ryl.* 116, *S. C.*) That the defendants intended to stipulate for this chance of a greater profit than seven per cent for the use of their money is evident, as it is made a part of the written agreement showing the terms upon which the loan was made; and there is no allegation that there was any mistake in drawing that agreement. They intended therefore to make a contract which the law declares to be usurious. And however unconscientious it may be, for the complainant to resist the payment of

1839.

Varet
v.
N. Y. Ins. Co.

the money lent and also to claim a return of the whole stock, this court, under the present laws of the state, is bound to lend him its aid to enforce the forfeiture.

The motion to dissolve the injunction is therefore denied, with eight dollars costs.