## THOMAS vs. MURRAY and others.

Whenever a lender stipulates for the chance of an advantage beyond the legal interest, the contract is usurious.

When promissory notes of equal amounts are exchanged, one is equal in value to the other, and there is no usury in the transaction; but where either party makes an advantage in the arrangement, over and above seven per cent, then the case is one of usury, if the transaction was designed as, or was connected with, a loan of money.

Money is equal to money, in such a transaction, but nothing else is equivalent to money. Where, upon a loan of money, any thing else is claimed to be equivalent to money, the lender must show the equality; and where any other thing than money is put upon a borrower, on an exchange of notes, in connection with, and as a condition of, a loan of money, the transaction is presumptively usurious, in law.

The defendant applied to W. for the loan of $200. W. said he had a note made by M. for $150, payable in hemlock lumber, and if the defendant would take that note he, W., would let him have the $200, and take the defendant's note for $350. The defendant replied that he did not want the M. note, and did not consider it good. Subsequently the defendant told W. that if he would let him have the $200 that day, he would take the M. note, provided W. would guaranty it. This W. agreed to do, and thereupon advanced the $200 in cash to the defendant, and delivered the M. note, with a guaranty indorsed, guarantying the collection thereof, but without any consideration therein expressed, and took from the defendant a note for $356.97, which embraced the interest on the $200 and on the $150 note, &c.

*Held* that even upon the assumption that W. was responsible upon his guaranty of the M. note, and that he could not elect to avoid it, the transaction was usurious upon its face, within the case of *Cleveland* v. *Loder*, (7 *Paige*, 559.)

But that the contract of guaranty was of no validity, for want of a consideration being expressed therein, and that the note for $150 being turned out by the lender, upon a void agreement of guaranty as part of the consideration for a loan of $200, the transaction presented a bald case of usury.

*Held, also,* that the fact that the agreement of W. to guaranty the note meant a *valid* guaranty, did not alter the case. That the contract being executed at the time, and not executory, must be held to express the agreement between the parties, and to furnish, upon its face, the only evidence of the contract actually made.

*Held,* further, that in an action upon the note given by the defendant to W. it was erroneous for the judge to charge the jury that the transaction would not be usurious if, at the time, W. supposed and believed that the M. note was a good note and the parties to it able to pay it, and the bargain between them was a genuine bargain for the sale of the note only, and without any intent to evade the statute.

And that the judge should have left it to the jury to say whether it was part

Thomas *v.* Murray.

and parcel of the bargain, and the intention of the parties, that the borrower should take the $150 note at his own risk in regard to the solvency of the parties thereto.

One who makes a contract which the law declares usurious, cannot escape the penalty of the offense upon the plea of ignorance of the law, or of the absence of an intention to evade the statute.

The law considers that every man intends the legitimate consequences of his acts.

APPEAL by the defendants from a judgment entered at a special term, upon the verdict of a jury. The action was brought to recover the amount of a promissory note for $356.97 made by Murray and Mattimore, and indorsed by the other defendants, dated September 16, 1857, and payable two months after date at ·the Atlantic Bank in the city·of New York. The answer sets up the defense of usury; alleging a corrupt agreement between the makers of the note and James M. Wood one of the indorsers, by which it was made a condition of a loan of $200 by Wood to Murray and Mattimore, that they should pay $6.97 for the use of the money, which was more than the legal interest, and take a worthless note made by one F. W. Morrow, who was insolvent, for $150, payable in hemlock lumber, and give their note for $356.97, and that Murray and Mattimore did receive the said $200 and the said $150 note, and give their note for $356.97, in pursuance of the said agreement. It appeared from the evidence, that as a part of the agreement for the sale of the Morrow note, Wood agreed to guaranty it, and that a guaranty was indorsed on the note by Wood, without expressing any consideration. The evidence on the part of the plaintiff showed that the $6.97 included in the note was for interest on the note and for money which was due from Murray and Mattimore on a previous transaction. The evidence also showed that Murray and Mattimore agreed to take the Morrow note because Murray, who was street commissioner of the village of Corning, wanted to use hemlock plank in making sidewalks, and that Wood at the time of the transaction believed the Morrow note to be perfectly good

Thomas *v.* Murray.

for its full amount.   The court charged the jury that if they should find from the evidence that the note in question included interest at the rate of one per cent per month, or that it was made upon an agreement to pay that rate of interest or any rate of interest greater than seven per cent, such note would be usurious and the plaintiff could not recover.   That the sale of the Morrow note to the defendant, at the time of making the loan would not render the transaction usurious if Wood, who sold the note to the defendant at the time of the sale supposed and believed that it was a good note and that the parties to it were able to pay, and the bargain between them for the sale and purchase of such note was a genuine bargain for the sale of the note only, and without any intent to evade the statute of usury, although the note turned out to be worthless and the purchase was part of the transaction and a condition of the loan.   To this part of the charge the defendant's counsel excepted.   The court further charged the jury that if Wood at the time of the agreement to sell the note and make the loan, and at the consummation thereof, believed the note good for the amount, and the parties to it able to pay, and promised to guaranty the collection thereof; the fact that he indorsed a void guaranty upon such note would not of itself render the transaction usurious, even if Wood knew at the time that the guaranty was not binding upon him.   That the promise to guaranty was a promise to give a valid guaranty, but the indorsement of an insufficient guaranty intending to evade the effect of such promise would not render the transaction usurious, if there was no intention to evade the statute of usury coupled with it.   To this part of the charge the defendant also excepted.   The defendant's counsel then requested the court to charge the jury that if they found that the defendant made application to Wood for the loan of $200, and that Wood exacted and imposed as a condition of the loan that the defendant should purchase the Morrow note of $150 and give the note in question, and the defendant in compliance with such exaction and condi-

tion took the note and accepted the loan and gave therefor the note in question, that alone would render the transaction usurious, unless the plaintiff should show that the $150 note was in reality worth at the time the amount for which it was given. The court refused so to charge, and the defendant's counsel excepted. The defendant's counsel also requested the court to charge the jury that if they found as stated in the foregoing proposition, and in addition thereto that the said note was worthless, the transaction was usurious, although Wood at the time had no knowledge that the note was worthless but supposed it perfectly good for the amount. The court refused so to charge, and the defendant's counsel excepted. The jury found a verdict for the plaintiff for $414.09, being the amount of the note and interest.

*George B. Bradley,* for the appellants.  I.  The court erred in charging the jury that if Wood, at the time of the transaction of making the loan, believed the Morrow note good and promised to guaranty its collection, the fact that he indorsed a void guaranty upon it would not render the transaction usurious; that the indorsement by Wood of a void guaranty, with intention to evade liability, would not render the transaction usurious if there was no intention to evade the statute of usury coupled with it.  The statute provides that "no person shall directly or indirectly take or receive in any way a greater sum than seven per cent per annum for the loan or forbearance of any money, goods, things in action, &c.  And that all notes &c., whereby there shall be reserved or taken any greater sum or value, shall be void."  The Morrow note was worthless.  The agreement of Wood to guaranty, was that he should make a valid guaranty.  The court so held.  The inducement to Murray to accept the loan upon the terms imposed, was the promise of Wood to guaranty the collection of the chattel note, and Murray supposed Wood had made a valid guaranty, while Wood, knowing its invalidity, made it with intent to evade liability.

The intent of Wood was to·deprive Murray of the amount of the Morrow note, in case it was not collectible of the maker. To that extent, then, Wood intended to be relieved of a hazard, and so far intended to get, and got, that much over the legal rate of interest. The intention of Wood to deprive Murray of, or take from him in any event a greater sum than the legal rate of interest, over and above the amount received by Murray of Wood, would be an intent, to that extent, to reserve a greater sum than legal interest. Therefore the intent of Wood, in the transaction to make an invalid guaranty, legally fastens upon him the intent to violate or evade the statute of usury. When a party knowingly takes or reserves in any form more than the legal rate for a loan or forbearance, the law fixes the intention. (*Steele* v. *Whipple*, 21 *Wend.* 103. *Read* v. *Coale*, 4 *Ind. R.* 288. *Scott* v. *Lloyd*, 9 *Pet.* 418.) And this is so whether he takes such excess in money or chances, however uncertain, for any advantage or benefit; and it follows that the same would be the case if the party should take such excess in being relieved from or evading a burden or hazard. (*Cleveland* v. *Loder*, 7 *Paige*, 557–9. *Barnard* v. *Young*, 17 *Vesey*, 44. *Chippendale* v. *Thurston*, 4 *Car. & Payne*, 98 ; 1 *Mood. & Malk.* 411. *White* v. *Wright*, 3 *Barn. & Cress.* 273.) In·this case Wood intended by the transaction to get the full amount of this chattel note, and not only be relieved from any burden or contingency in its collection, but actually intended by his guaranty to evade liability in case the note should not be collected, and all this, too, in addition to the legal rate of interest on the entire amount of both the sum loaned and the chattel note. This rendered the transaction usurious at law, and fastened upon Wood the intention to violate the statute.

II. The court erred in refusing to submit to the jury and charge them as first requested. This chattel note was not commercial paper, it was not due at the time of the transaction, and of course not convertible into money. The defendant applied for a loan of $200 in money merely, and the taking

of this chattel note at $150 was imposed and exacted by Wood as a condition of the loan. That note was payable in hemlock plank at a fixed price. The defendant took the note to get the loan, and gave the note sued on, including the several amounts, with interest. (1.) The transaction rendered the note usurious, because Wood, by this compliance with the condition, imposed upon the defendant the burden of collection of the note and the hazard of the ability of the maker to pay it when it should become due, and thereby Wood relieved himself from that burden and hazard, and realized whatever it was worth in addition to the legal rate of interest and without allowing the defendant any thing for it. (2.) Wood also relieved himself from any hazard of loss by reason of change or reduction in market value of hemlock lumber at the time the note should become due. (*See cases above cited.*) (3.) The only chances of getting the money on the chattel note, if paid at all, depended upon the fact that the lumber should be worth as much or more than $7 per M., and if worth less than that sum, such property at a reduced value only could be expected. So there was a chance of getting less than $150 on the note, but no possibility of getting more than that sum. (4.) The effect of the transaction was therefore that Wood should have and the defendant should allow $7 per M. for the hemlock lumber, whether worth that sum or not, as a condition of the loan. This is usury. (*See cases above cited.*) (5.) It does not appear that hemlock lumber was worth $7 per M. at the time of the transaction, and that will not be presumed. The price fixed by the note is no evidence of its value, but only fixes the price that the owner of the note was bound to allow without any regard to value. The taking of the note as a condition of the loan having been imposed and exacted, thereby requiring the defendant to take hemlock lumber at a price fixed by Wood, the burden of proof was upon the plaintiff to show that it was worth the sum fixed by the note, and having failed to show this, the transaction will be deemed usurious. (*Har-*

*greaves* v. *Hutchinson*, 2 *Ad. & E.* 12.    *Davis* v. *Hardacre*, 2 *Campb.* 375.    2 *Parsons on Cont.* 387.)    This was held by Lord Ellenborough, to be the rule in all cases where a borrower is compelled to take property, and it certainly should be so where the lender fixes the price at which the property must be taken by the borrower.    (*Davis* v. *Hardacre*, 2 *Campb.* 375.)

III. The court also erred in declining to charge as further requested by the defendant's counsel.    The fact that Wood imposed and exacted as a condition of making the loan, that the defendant should take this chattel note, with the fact that the note was entirely worthless, renders the transaction usurious.    (*Seymour* v. *Strong*, 4 *Hill*, 255.    *Lowe* v. *Waller*, *Doug.* 736.    *Barker* v. *Van Sommer*, 1 *Brown's Ch.* 148. *Davidson* v. *Barnard*, 1 *Esp.* 11; *Id* 40.    *Pratt* v. *Adams*, 7 *Paige*, 615.)    And that is so, whether or not Wood had knowledge that the note was worthless.    (*Gale* v. *Grannis*, 9 *Ind. R.* 140.    *Morgan* v. *Schemerhorn*, 1 *Paige*, 544.)    The chattel note not being due at the time of the transaction was not worth $150 if good, and Wood knew that he could not then sell the note for that sum.    (*Morgan* v. *Schemerhorn*, *supra*.)    Wood having coerced the taking of the note as a condition of the loan, was legally chargable with knowledge of its worthless character, and cannot relieve himself by saying that he had not such knowledge.

IV. The rule adopted by the court in the charge and refusal to charge is intolerable, in view of the evil sought to be remedied by the statute of usury.    It will give the usurer almost unlimited power to speculate out of the necessity of the borrower, the exercise of which this case presents a signal example.

*George T. Spencer*, for the respondent.    I. The alleged usurious transaction was between Murray and Mattimore, the makers of the note, and Wood, one of the indorsers.    Inasmuch as the evidence tended to show that the sale of the

Morrow note was made to Murray and Mattimore because they wanted the hemlock plank in which it was payable, and also that Wood believed the note good for the full amount, it became a question for the jury whether the sale of the Morrow note was a genuine bargain and sale, and made without any intent to evade the statute against usury, and this question was fairly submitted to them, and they were properly instructed that if no such intention existed in the case supposed, the transaction was not usurious. The taking a note for a loan of money and the price of a chattel or a chose in action sold at the same time, is not per se usurious. To make the transaction illegal on this ground, it must be made to appear that it secures to the lender more than legal interest, and that the sale of the chattel or chose in action was made with the intent, under the cover or disguise of the transaction, to secure illegal interest; and when the lender in fact obtains more than legal interest, it is competent for him to show that it was done unintentionally and through a mistake of calculation or of fact. (*New York Firemen's Ins. Co.* v. *Sturges*, 2 *Cowen*, 664. *Same* v. *Ely, Id.* 678, 704. *Archibald* v. *Thomas*, 3 *id.* 284. *Farmers' Loan and Ins. Co.* v. *Clowes*, 3 *Comst.* 470. *Leavitt* v. *De Launy*, 4 *id.* 364. *Mumford* v. *American Life Ins. Co., Id.* 463. *Bull* v. *Rice*, 1 *Selden,* 315. *Booth* v. *Swezey*, 4 *id.* 276. *Schermerhorn* v. *Talman*, 14 *N. York Rep.* 93, 116. *Nourse* v. *Prime*, 7 *John. Ch.* 69. *Pratt* v. *Adams*, 7 *Paige*, 615, 632. *Seymour* v. *Marvin*, 11 *Barb.* 80. *Marvine* v. *Hymers*, 2 *Kern.* 223, 231, 236.)

II. The agreement to guaranty the Morrow note, though it may have been designedly drawn so as to be invalid, is evidence of the absence of any intent to evade the statute; and if the makers of the note accepted the guaranty, supposing it to be valid, this is still further evidence of the absence of any corrupt agreement. If Murray and Mattimore took the Morrow note, relying on the guaranty of Wood, the transaction thus became the obligation of one party for that of the other

for an equal amount, which is perfectly valid, though the obligation of one party is depreciated or worthless while that of the other is good and available for the full amount.    Neither can a corrupt usurious agreement exist without the concurrence of both parties.    (*Schermerhorn* v. *Talman*, 14 *N. Y. Rep.* 93, 118.    *Aldrich* v. *Reynolds*, 1 *Barb. Ch.* 43. *Condit* v. *Baldwin*, 21 *Barb.* 181.)

III. The value of a promissory note or other chose in action is presumptively the sum expressed on its face, and if any party seeks to depreciate it, the burden of proof is on him.    But when the value of a chattel is in controversy, it is always to be established by evidence.    It was not necessary, therefore, in any view of the case, for the plaintiff to show that the Morrow note was good for the amount.    The answer alleges the insolvency of Morrow, and the affirmative of that issue is with the defendants.    But if Wood, at the time of the transaction, acted in the belief that Morrow was solvent and his note good for the full amount, it was entirely immaterial how the fact was.    The court therefore properly refused to charge the jury as requested by the defendants' counsel in either particular.    (*Schermerhorn* v. *Talman*, 14 *N. Y. Rep.* 93, 116, 118.    *Aldrich* v. *Reynolds*, 1 *Barb. Ch.* 43.    *Condit* v. *Baldwin*, 21 *Barb.* 181.    *Sedgwick on Dam.* 488.    *Ingalls* v. *Lord*, 1 *Cowen*, 240.)

*By the Court*, E. DARWIN SMITH, J.    Upon the face of the transaction, as it appears upon the undisputed evidence given on the trial of this action, it seems to me to present a clear case of usury.    The defendant Murray, in the fore part of the month of September, 1857, applied to the witness Wood, who was then keeping an exchange and banking office at Corning, for the loan of $200.    Wood said he had a note against one Morrow for $150, payable in hemlock lumber, and if the defendant would take that note he would let him have the $200 and take the note of the defendants for $350. Murray told him he did not want the Morrow note, and that

Thomas *v.* Murray.

he did not consider it good, and that he would try and raise the money in some other way before he would take it. A few days afterwards Murray went again to Wood's office, when Wood asked him if he had concluded to take the Morrow note. Murray told him if he would let him have the $200 that day he would take the Morrow note, provided he would guaranty it. This Wood agreed to do, and then advanced the $200 in cash, delivered the Morrow note with a guaranty indorsed guarantying the collection thereof, without any consideration therein expressed, and took from the defendant the note in suit for $356.97, at two months. This $356.97 embraced interest on the $200 and on the $150 note, with some items of exchange not improperly included, as Wood states the facts. The Morrow note was dated May 20th, 1857, and was payable on the 1st of October thereafter, in hemlock timber, in plank at $7 per thousand. Upon the assumption that Wood was responsible upon his guaranty of the Morrow note, and that he may not elect to avoid it, it seems to me that the transaction is usurious upon its face, within the case of *Cleveland* v. *Loder*, (7 *Paige*, 559.) He stipulated for an advantage over and above seven per cent on the loan of this $200. The note is for $356.97, and includes interest on the $200, and interest on the $150 note treated as cash and upon interest from the date of the note, September 16, 1857. The Morrow note did not carry interest, and therefore the amount of it was put upon interest 17 days—fourteen and the three days of grace—before it fell due. Then the Morrow note was payable in *lumber*, not in *money*. If this note had been payable in money, then aside from this question of the interest on it for seventeen days, it would have been virtually nothing more than the exchange of the plaintiff's note or liability for that of the defendants to the amount of the $150, which would have been an entirely lawful transaction. But by taking the defendants' note for $350, embracing this note payable in cash with interest, Wood stipulated to turn this lumber note into money and relieve

Thomas v. Murray.

himself from all risk in regard to the value of the lumber. All he would have been bound to do, upon his guaranty of Morrow's note, would have been to see that the lumber was delivered upon it when due, whatever might have been its value at the time. If the lumber, on the 1st of October, was worth $5 or $6 per 1000 feet, instead of $7, Wood, if Morrow failed to pay it, would have made that difference had he fulfilled this contract for Morrow at that time, by force of the transaction, and would have saved a loss of that amount provided he had kept the note. He made a contract which secured to him cash for this $150 note without any risk of loss in respect to the price or depreciation of the lumber, or any loss or risk attending the sale thereof, or any contingency connected with the property. In *Cleveland* v. *Loder*, Chancellor Walworth says, " Whenever the lender stipulates for the chance of an advantage beyond the legal interest, the contract is usurious." The lender here secured the advantage of turning lumber into money at a fixed price, probably much above its actual value, without any risk or contingency. This is not the case of a sale of property; for a man cannot sell his own note, or paper made or indorsed or guarantied by him. (*Schermerhorn* v. *Talman*, (14 *N. Y. Rep.* 117.) The question what was the value of the lumber does not, I think, legitimately arise, within the cases of the *Dry Dock Bank* v. *The American Life Insurance and Trust Co.*, (3 *Comst.* 358,) for this is not the case of a sale of lumber *in presenti*. If the lumber had been taken and delivered at the time, as a condition of the loan, instead of the note, the question of its value would be material, and the usury, if any, would consist in securing to the lender the difference between its actual value and the price paid or stipulated for in the contract. The case, so far as relates to the $150, supposing it guarantied by Wood, is in the nature of an exchange of securities. In *Dey* v. *Dunham*, (2 *John. Ch.* 182,) it was held that if, on the exchange of notes, one party reserved a commission greater than seven per cent, the transaction would be usuri-

ous. In *Fanning* v. *Dunham*, (5 *John. Ch.* 122,) the parties exchanged notes and one reserved $2\frac{1}{2}$ per cent commissions, and the transaction was held usurious, and the same was held also in *Dunham* v. *Dey*, (13 *John.* 40,) and also in *Kent* v. *Lowen*, (1 *Camp.* 177.)   If the sale or exchange of this Morrow note had been *unconnected with* a loan of money, the case would have been essentially different.   It is not the case of a sale of a valid chose in action for less than its face, within the cases of *Cram* v. *Hendricks*, (7 *Wend.* 569,) and *Rapelye* v. *Anderson*, (4 *Hill*, 472.)   The application to Wood was for a loan of money.   The transaction was purely a loan of money, and this note was imposed and put upon the defendants in connection with and as a condition of a loan of money, and a security, the $350 note in suit, taken for the whole amount.   This consideration, I think, was controlling in the cases of *Lowe* v. *Waller*, (*Doug.* 739,) *Ketchum* v. *Barber*, (4 *Hill*, 224,) and in numerous other cases.   When notes in equal amounts are exchanged, one is equal in value to the other, and there is no pretense of usury in the transaction; but where either party makes an advantage in the arrangement, over and above seven per cent, then the case is one of usury, as I understand the cases, if the transaction was designed as, or connected with, a loan of money.   Upon this principle I think this case one of usury, because the Morrow note was not equal to the defendants', it not being payable in money.   Money is equal to money in such a transaction, but nothing else is equivalent to money; and where upon a loan of money any thing else is claimed to be equivalent to money, the lender in such a case, I think, must show the equality; and where any other thing than money is put upon a borrower in an exchange of notes, in connection with and as a condition of a loan of money, I think the transaction presumptively usurious in law.   (*Davis* v. *Hardacre*, 2 *Camp.* 375.   2 *Parsons on Cont.* 387.   *Swartwout* v. *Payne*, 19 *John.* 294.)

   In this view of the law of the case, the refusal of the circuit judge to charge as requested on this point was error, and

the exceptions for such refusal well taken in respect to both requests to charge. The transaction appearing confessedly to be one of *loan,* there was no question of fact for the jury until the plaintiff attempted some explanation by evidence tending to repel the presumption of usury.

But there is another view of the case which seems to me more satisfactory upon the facts. The evidence in the case shows quite conclusively that this Morrow note was in fact worthless; that the parties to it, at the time it was turned out to the defendants, were entirely insolvent and had been so, the maker for six years and the indorser for several years. It appears, also, that Wood had tried to trade off the note before he transferred it to the defendants, for a buggy, and could not trade, although the owner of the buggy desired to sell it, and that at the time when Wood proposed to turn it out to the defendant Murray, the latter told him " that he did not consider it good," and also told him he did not want the note, and did not think he could use it, &c. In view of these facts it seems to me quite clear that Wood intended, in making the loan of the $200, to get on such loan, out of the defendants, the sum of $150, the amount of the Morrow note, in addition to the interest on the money loaned, if the note proved worthless. His desire to part with it and his insisting on the defendants' taking it with the $200, implies upon its face that he regarded it as certainly a doubtful debt, or at least not equal to money. The contract then, upon its face, in this view, was a contract to loan $200, and to turn out a worthless or doubtful note for $150, and take the defendants' note for the sum of $350 and interest. This $150 was thus taken for and upon the loan of $200 for the consideration of such loan and as a condition thereof, and for the forbearance of this $200 two months. In this view of the facts they present a clear case of usury. But it is said that the contract is not usurious in this view, because Wood agreed to guaranty the note, and that such agreement of guaranty meant a valid guaranty, and so the learned judge charged at the cir-

cuit. This would undoubtedly be so if the contract were executory. But it was in fact executed at the time, and becomes necessarily its own expositor. The contract of guaranty was written on the note at the time and in the presence of the agent and parties, and prima facie must be held to express the agreement between the parties, and furnishes upon its face the only evidence of the contract actually made. Neither party can contradict it, and except in a case of mistake or fraud neither party can vary or reform it, either in law or equity. It is not proved or alleged that there was either error or mistake in the making of the contract of guaranty, and it must therefore be deemed, in a legal point of view, the true contract between the parties. This contract is confessedly invalid upon its face, and it therefore appears that this note was turned out upon an agreement of guaranty which both parties knew or were bound to know, at the time, was utterly void. Neither party can be permitted to allege ignorance of the law, and certainly Wood cannot, for it is conceded on this argument and was assumed on the trial and in the charge of the judge, that he knew that this contract was of no validity. It is then to be considered, in this view of the case, as no contract. It has no force as a contract, and the case, stripped of this pretense of a contract of guaranty, presents a bald case of usury, upon the assumption that this doubtful or worthless note of $150 was put upon these defendants as part of the consideration for the loan of $200.

But it is said that though Wood knew that this guaranty was invalid, there was no intent to evade the statute of usury, and this is the point on which the case obviously turned at the circuit. But this will not do. This man Wood cannot be let off upon the ground that he intended to commit a *fraud*, but not usury. If he knew his contract of guaranty to be invalid, he knew also, and the defendants also must be presumed to have known what was the legal effect of the transaction, and that he was to get this $150, or might get it for nothing, out of these defendants. That constitutes usury,

Thomas *v.* Murray.

and a man who makes a contract which the law declares usurious cannot escape the penalty of such offense upon the plea of ignorance of the law, or of the absence of an intention to evade the statute. The law considers that every man intends the legitimate consequences of his acts. In a large number of cases of adjudged usury there was an unquestioned ignorance in point of fact of the legal effect of the contract. Such was the case of *The New York Firemen's Insurance Co.* v. *Ely,* (2 *Cowen,* 678 ;) and *The Bank of Utica* v. *Wager,* (2 *id.* 712, 769 ; 8 *id.* 398 ;) and *Cleveland* v. *Loder,* (*supra,*) and *The Dry Dock Bank* v. *The American Life Insurance Co.,* (*supra,*) and many other cases. But the statute of usury cannot be evaded in this way. All agreements, which in legal effect give to the lender of money any profit or advantage, certain or contingent, more than at the rate of seven per cent interest, violate the statute. It is not necessary to allege or prove, aliunde, any particular *intent* or special corruption in such a case. It is usury upon its face, and the court must so decide as matter of law. It is only when the true character of the transaction is equivocal, whether it be a case of bargain and sale or a loan and a device for usury, that the question becomes one of fact and belongs to the jury. In this case the legal inference of usury upon the face of the transaction is met by the claim, on the part of the plaintiff, that so far as relates to this $150 note, the contract was in fact one of bargain and sale. This was the view taken of this question by the learned judge at the circuit, and this brings us to the exceptions to the charge. The theory of the charge is that the note was the subject of sale as valid business paper in the hands of Wood, the guarantee thereon being void, and that therefore there could be no usury in the sale of such note. The first branch of the charge of the judge at the circuit I therefore think was erroneous in this, that he said to the jury that the transaction would not be usurious, if at the time of the sale Wood supposed and believed that it was a good note, and the parties to it were able

Thomas *v.* Murray.

to pay it, and the bargain between them was a bargain for the sale of this note only, and without any intent to evade the statute, &c.; and that it omits to leave it, in the same connection, to the jury to say whether it was part and parcel of the bargain and the intention of the parties at the time, that the defendant should take such note at his own risk in regard to the solvency of the parties thereto. If that had been embraced in the charge, this part of it would have been substantially right; but as it stands, this question in regard to the bargain, and which would have had doubtless an important influence with the jury, was entirely excluded from their consideration. Upon this question the jury would have been entitled to look beyond the form of the transaction, and to take into consideration all that was said and done at the time of the trade, the void guaranty and all other facts which are part of the *res gestæ* of sale. Upon this point, of the sale of the note, the question would necessarily arise whether Murray understood and expected that he was to have a valid guaranty of the note. If he did, and that was the real contract, there could be no genuine bargain for its purchase and sale, and the jury could not have so found as a question of *fact*, looking at the real intention of the parties. Upon the charge to the jury, I think they might have found that there was an actual sale of the note upon the agreement of Wood to guaranty it. I think therefore there should be a new trial.

New trial granted.

[MONROE GENERAL TERM, December 3, 1860. *Smith, Johnson* and *Knox,* Justices.]