JOHN M. QUACKENBOS, Appellant, *v.* WILLIAM H. SAYER et al., Respondents.

Where, upon application to one for a loan of money, he declines, but offers to, and does, nominally sell to the applicant, upon a credit, property at an exorbitant price, which he knows the latter does not want, and can only use as a substitute for, and as a means of, raising the money, the transaction will be considered not as a *bona fide* sale but as a usurious loan.

(Submitted June 14, 1875; decided June 22, 1875.)

APPEAL from order of the General Term of the Supreme Court in the second judicial department, reversing a judg-

ment in favor of plaintiff, entered upon the report of a referee, and granting a new trial. (Reported below, 2 Hun, 157.)

The action was brought to foreclose a mortgage executed by defendant Sayer and his wife, dated January 8, 1875, payable five years from date, with an interest clause making the principal due, at the option of the holder, in case of non-payment of interest for thirty days.

The evidence was, in substance, that one Stephen H. Sayer, son of defendant Sayer, applied to plaintiff for a loan. Plaintiff replied that all his money was in railroad bonds; that he would have some money about the first of April following. Stephen stated that his finances were in such a state that he could not hold out until that time, and that, if plaintiff would let him have some of his railroad bonds, he could borrow money upon them until April first, and proposed a bond and mortgage by his father as security. The parties separated. Stephen ascertained he could get a loan, with the bonds as collateral, at the rate of eighty cents on a dollar of their face. He again met plaintiff, and notified him of the fact. Plaintiff charged him for five $1,000 bonds the sum of $5,375. The bonds were then worth from eighty to eighty-five cents on a dollar.

The bond and mortgage for that amount was executed and delivered. Stephen received the bonds and deposited them as collateral for a loan of $4,000, and subsequently sold them for eighty-five cents on a dollar.

The referee found that the sale was made in good faith, and the bond and mortgage valid, and directed the usual judgment of foreclosure and sale.

*S. W. Fullerton* for the appellant. The sale of the bonds was a *bona fide* transaction and not a usurious loan. (*Dry Dock Bk.* v. *Am. L. Ins. and T. Co.*, 3 Coms., 344; *Schermerhorn* v. *Talman*, 14 N. Y., 93.)

*Gilbert O. Hulse* for the respondents. It was not necessary to prove a corrupt agreement between the borrower and

lender in order to establish usury. (*Powell* v. *Waters*, 8 Cow., 696 ; *Bk. of Utica* v. *Wager*, 2 id., 769 ; *Dry Dock* v. *Am. L. Ins. and T. Co.*, 3 N. Y., 369; *Schermerhorn* v. *Talman*, 14 id., 93, 118, 120 ; *F. L. and T. Co.* v. *Carroll*, 5 Barb., 613, 658, 659 ; *Fielder* v. *Darrin*, 50 N. Y., 437, 444 ; *Birdsall* v. *Patterson*, 51 id., 43, 48.) The transaction was a loan. (Ord. on Usury, 23 ; *Ketchum* v. *Barber*, 4 Hill, 424; *Rapilge* v. *Anderson*, id., 472 ; *Dry Dock* v. *A. L. Ins. and T. Co.*, 3 N. Y., 361, 362; *Schermerhorn* v. *Talman*, 14 id., 115, 116, 120 ; *Fielder* v. *Darrin*, 50 id., 437, 442.)

Allen, J. That the transaction by which the plaintiff was enabled to dispose of his bonds for a price in excess of their par value, and still more in excess of their market value, was oppressive, and the result of an advantage taken by him of the pecuniary embarrassment, and pressing necessities of the individual with whom he dealt is very obvious. But although the bargain was unconscionable, still if not usurious it may be technically legal, and such as the plaintiff may enforce. The sole question is, whether the transaction was a *bona fide* sale of the bonds at an exorbitant rate, or a loan of money under the guise and color of sale of choses in action, by which the lender reserved or secured to himself a greater rate of interest than that allowed by law. The transaction must be judged by its real character, rather than by the form and color which the parties have seen fit to give it. The shifts and devices of usurers to evade the statutes against usury, have taken every shape and form that the wit of man could devise, but none have been allowed to prevail. Courts have been astute in getting at the true intent of the parties, and giving effect to the statute. The device of the present appellant is not novel. As early as the time of Lord Mansfield, in summing up to a jury he said to them, that " the most usual form of usury was a pretended sale of goods." (*Lowe* v. *Walter*, Doug., 736.) In that case the negotiation was for a loan of money ; the lender said he could not advance cash,

but would furnish goods which the borrower took and sold by the intervention of a broker. The securities were held usurious. *Doe* v. *Barnard* (1 Esp., 11), was ejectment by mortgagee. The mortgagor applied to the mortgagee for a loan of money. The mortgagee said that all his money was in the funds, then standing at seventy-three, but if the applicant would take the stock at seventy-five, he would let him have it. He took it and gave the mortgage, Lord Kenyon held the transaction to be clearly usurious, and nonsuited the plaintiff. A case not distinguishable in its minutest circumstance from the present. The principle of these cases and the doctrines adjudged have been adopted and uniformly applied by the courts of this State. (*Stuart* v. *Mech. and Farmers Bk. of Albany*, 19 J. R., 496.) It was held in *Eagleson* v. *Shotwell* (1 J. Ch., 536), that if on application for a loan of money, the sale of shares in an insurance company at par is made the condition of the loan, when the shares are in fact below par, the transaction is usurious. (See also, *Cleveland* v. *Loder*, 7 Paige, 557; *Dry Dock Bank* v. *Am. Life Ins. and T. Co.*, 3 Comst., 344.) The application to the plaintiff in the case at bar was by one in pressing need of money, and whose necessities could not brook delay, for a loan of money. The occasion and the urgency of the application were known to the plaintiff. He equally well knew that the applicant did not want, and had no means of purchasing choses in action or railroad bonds, and could only take them as a substitute for, and as a means of raising the money. He could not and did not keep them twenty-four hours, but hypothecated them at eighty cents on the dollar for money to meet present necessities, first giving the bond and mortgage in suit for them at a premium of seven and a half per centum. They were afterwards sold by the pledgee at eighty-five cents. The actual market value was from eighty to eighty-five cents on the dollar. The plaintiff had the usual response to the application that his cash was in these bonds, and that they were of peculiar value to him. Usurers' wares have always a peculiar value when parted with under such circumstances.

The difficulty is, courts and jurors do not appreciate the values of property or the reluctance of holders to part with it in such cases.

This is a plain and most palpable attempt to evade the statute of usury, by an old and worn out contrivance. Judge BARNARD, in a very brief opinion, concisely states the transaction stripped of its coloring, and shows its usurious character. Every circumstance stated by the witnesses, some of greater, and some of lesser importance, tends to throw light upon the acts and intents of the plaintiff, and show the invalidity of the mortgage.

The order granting a new trial must be affirmed, and judgment absolute for the defendants.

All concur.

Order affirmed and judgment accordingly.