## PEOPLE v. SILVERBERG.

(Court of Special Sessions, New York County.  February 26, 1915.)

1. USURY 149(1)—LOAN—BANKING LAW.

Under Banking Law (Consol. Laws, c. 2) § 314, forbidding usury, a transaction whereby a complainant, who was in sharp need of money, applied to defendant for a loan of $100, and was told that defendant would sell him a diamond ring, which he could pawn for that amount, followed by defendant's delivery of the ring, for which complainant agreed to pay $295 in monthly installments, and which he pawned for $125, when the wholesale value of the ring was $145, and its retail value $180, constituted the offense of usury.

[Ed. Note.—For other cases, see Usury, Cent. Dig. § 441; Dec. Dig. 149(1).]

Moss, J., dissenting.

Jacob Silverberg was charged with usury.  Defendant found guilty. Judgment affirmed, 171 App. Div. 914, 155 N. Y. Supp. 1132.

Argued before RUSSELL, C. J., and FLEMING and MOSS, JJ.

Charles Albert Perkins, Dist. Atty., and Walter S. Heilborn, Deputy Asst. Dist. Atty., both of New York City, for the People.

Goldstein & Goldstein, of New York City (Abraham Lipton, of New York City, of counsel), for defendant.

RUSSELL, C. J.  The facts in the case at bar are simple, and present a single very clear issue.  The defendant is charged with usury, and violation of section 314 of the Banking Law, in that he charged more than at the rate of 6 per cent. per annum for a loan of money.

The complainant, one Thomas Kane, testified that he applied to the defendant, Silverberg, for a loan of $100 on the 21st of February, 1914.  He was informed by said defendant that he had no money to lend, but that he would sell the said Kane a diamond ring, which he could pawn for that amount.  Thereupon defendant delivered to the said Kane a ring, for which the complainant agreed to pay $295 in monthly installments.  On the same day Kane pawned the ring for $125.  The value of the ring is variously estimated by the witnesses who testified at the trial.  The wholesale value of the ring, which is the value of the ring to the defendant, was put at $145; the fair retail value of the ring, according to the people's expert, was put at $180.  On the testimony of the people, therefore, the defendant is charged with having exacted $115—the difference between the retail value of the ring and the price charged to the complainant—for the loan of $180. If this transaction, or pretended or apparent sale, can properly be regarded as a mere disguise of a loan, and a devise to evade the usury law, then the defendant is guilty of the crime charged.

The only difficult question presented in this controversy is a question of fact, namely, "Was the transaction a loan of money or a sale of goods?"  Defendant's contention is, and must be, that the said

149(1)—For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

transaction was a sale of goods, and hence necessarily and presumably an ordinary commercial transaction, such as men of good judgment and practical sagacity are in the habit of entering into every day. Now this is most improbable. The complainant in this case was earning a salary of $90 per month. His income was small and barely sufficient for his living expenses. He was in sharp need of money, rather than in easy financial circumstances. He was already heavily in debt on a similar transaction. It follows, therefore, that if he were a prudent man, or one even ordinarily sane, he could hardly be supposed to be in the market for diamonds for purely decorative purposes, and certainly not on the scale of lavish expenditure shown by the testimony in this case.

Counsel for the defense urges that the authorities cited by the district attorney in his brief are cases in the Court of Appeals in this state in which the court adjudicates the question of liability at civil law. They do not, he urges, involve the liberty of the defendant; whereas, in criminal prosecutions, the defendant is entitled to the benefit of any reasonable doubt, and is further entitled to such benefit as may be derived from testimony showing his good character. Defendant further contends that the testimony of the complaining witness is wholly unsupported by any corroborating testimony, and is, in fact, contradicted directly by the defendant. The truth is, however, that the points involving the same narrow issue are the same in both the civil and the criminal law, namely, "Did the defendant charge more than 6 per centum per annum as interest on a loan?" Then, further, the story of the complaining witness, Kane, regarding his transactions with the defendant is by no means unsupported. On the contrary, it is substantially reinforced by the written instrument under the terms of which the ring was produced and turned over, and the further fact that the ring was pawned the same day, and the still further fact that the parties to the transaction had conducted a previous negotiation involving substantially the same incidents.

The defendant lays great stress in his argument on the proof given at the trial establishing his good character. This testimony was abundant, clear, and cogent. However, it appears to the court that such testimony was quite unnecessary, and, in fact, is not conclusive in cases like this. Many enlightened communities, such as England, Massachusetts, and other states of the Union, have no usury law. New York even admits of certain exceptions, as in the case of pawnbrokers and certain loans of $5,000 and over properly secured. If the offense charged were one involving moral turpitude or shocking to the conscience of mankind, the case would be quite different. Nor is it vital that the complainant was a too willing victim of the usurer. The whole proposition is one involving public policy, in which necessitous borrowers as a class are necessarily interested. The questions involved are therefore to be determined on broad principles, and not on any such narrow consideration as the possible good character and reputation of the defendant.

Courts always attempt to search out the real nature of a transaction, and will never allow mere form to circumvent the law. Kane did

not go to the defendant for the purpose of buying a diamond ring. He went there to borrow money. Whatever took place after that was the creation of the defendant and his associates in wrongdoing. The plain rule of law is that:

"Where property is sold at an exorbitant price, to be paid at a future day, in order to enable the purchaser to sell it immediately for cash, and thus obtain the money of which he is in need, the courts will regard the transaction as a mere disguise for a loan; and, if the purchaser's obligation is for a greater sum than the fair value of the property sold and lawful interest, it will be held usurious." 39 Cyc. 929.

In Quackenbos v. Sayer, 62 N. Y. 344, the court says:

"The sole question is whether the transaction was a bona fide sale of the bonds at an exorbitant rate, or a loan of money under the guise and color of a sale of choses in action, by which the lender reserved or secured to himself a greater rate of interest than that allowed by law. The transaction must be judged by its real character, rather than by the form and color which the parties have seen fit to give it. The shifts and devices of usurers to evade the statutes against usury have taken every shape and form that the wit of man could devise, but none have been allowed to prevail. Courts have been astute in getting at the true intent of the parties, and giving effect to the statute. The device of the present appellant is not novel. As early as the time of Lord Mansfield, in summing up to a jury he said to them that 'the most usual form of usury was a, pretended sale of goods.' Lowe v. Walter, Doug. 736. In that case the negotiation was for a loan of money; the lender said he could not advance cash, but would furnish goods, which the borrower took and sold by the intervention of a broker. The securities were held usurious."

The court referred to other English cases in which the same doctrine was announced, and continued as follows:

"The principle of these cases and the doctrines adjudged have been adopted and uniformly applied by the courts of this state. Stuart v. Mech. & Farmers' Bank of Albany, 19 Johns. 496. It was held in Eagleson v. Shotwell, 1 Johns. Ch. 536, that if, on application for a loan of money, the sale of shares in an insurance company at par is made the condition of the loan, when the shares are in fact below par, the transaction is usurious. See, also, Cleveland v. Loder, 7 Paige, 557; Dry Dock Bank v. Am. Life Ins. & T. Co., 3 N. Y. (3 Comst.) 344. The application to the plaintiff in the case at bar was by one in pressing need of money and whose necessities could not brook delay for a loan of money."

In Dry Dock Bank v. American Life Ins. & Trust Co., 3 N. Y. 344, the Court of Appeals of this state says plainly, "A loan may be disguised in the form of a sale of goods," and continues:

"Where usury is disguised under a sale of merchandise, the property in the goods passes to the vendee, but the excess of price over the just value is considered as a premium for the forbearance of the debt, founded on a presumed loan of so much of the purchase money as is equivalent to the cash value of the commodity sold. See cases subsequently cited. The same rule applies to a sale or exchange of choses in action, or of credit, when the real object is a loan of money, although no money is received by the borrower. The law, looking at the substance of the transaction, converts the substitute agreed upon by the parties, into money according to its cash value. This amount constitutes the loan to the borrower, and the real debt due from him to the lender. If the securities received by the former are depreciated, the difference between the nominal and money value is so much interest for the forbearance of the debt. If they are equivalent to money, the usury is to be established by showing more direct collateral advantage to the lender, which would avoid a contract upon a loan of money. * * * Where,

however, the object of the parties is a loan of money, and something else under the form of an exchange or sale is substituted for it, the principal of the loan, and consequently of the debt contracted by the nominal vendee, will be the value in money of the substitute received by him; and any consideration paid or secured to the vendor beyond that will in general be considered as interest for its forbearance. 1 Bro. Ch. C. 150; Lowe v. Waller, Dougl. 708; 2 Camp. N. P. 375; Holt's N. P. C. 295; Comyn on Usury, 94, 95."

The device employed by the defendant is the latest refuge of the money lender in this city. It is a plain and palpable attempt to evade the statute by an old and worn-out contrivance.

The court finds the defendant guilty.

FLEMING, J., concurs. MOSS, J., dissents.