MEYER KRIM, Plaintiff, *v.* THE MORRIS PLAN INDUSTRIAL BANK OF NEW YORK, Defendant.

Municipal Court of New York, Borough of Brooklyn, Sixth District, December 29, 1939.

*Nathan D. Aron*, for the plaintiff.

*Harold H. Kissam*, for the defendant.

BLADEN, J. One Nathan Aron, the assignor of the plaintiff, and his brother, Meyer Aron, agreed with the Grove Motor Sales Co., Inc., a few days prior to August 25, 1936, to purchase a used automobile from it. The price agreed upon was $450; $150 of this amount was to be paid in cash, which was to include a used car as part of that $150, and the balance of $300 was to be financed by the Grove Motor Sales Co., Inc.

Instead of having the Grove Motor Sales Co., Inc., finance the said balance of $300, the said Nathan Aron, on August 25, 1936, applied to the defendant for a loan of $300, stating that he was

buying a 1935 used car. Mr. Coman, the manager of the defendant, at the office at which the said Nathan Aron applied for a loan, told him that the defendant had an automobile financing plan and that on that plan it could arrange for the purchase at a cost of nine per cent because it was a used car. There was some discussion as to why the rate of interest should be nine per cent instead of six per cent. Aron testified he asked the said defendant's manager why the rate should be nine per cent when the defendant advertised it was making loans on automobiles at six per cent, and that the manager said that the six per cent loans were made for new cars and the nine per cent loans were for used cars.

The said manager of the defendant telephoned to Grove Motor Sales Co., Inc., and ascertained the motor and serial number of the automobile which was to be delivered to Aron, and he also checked Aron's credit references.

Later in the same day, in response to a telephone message, Nathan Aron again called at the defendant's office and again saw the said defendant's manager, who submitted to him for signature a paper which the parties refer to as a conditional sales agreement, purporting to be between the Grove Motor Sales Co., Inc., and Nathan D. Aron, for the sale of a used 1935 Chevrolet automobile for $477, payable as follows: On or before delivery $150, and the total deferred balance of $327 payable by Nathan Aron to the holder of said agreement at the office of The Morris Plan Industrial Bank of New York as follows: $30 on September 25, 1936, and the balance in eleven $27 equal successive monthly installments on the same day of each month thereafter.

Nathan Aron signed this paper and received from defendant's manager two copies of the same and a check of the defendant, drawn to the order of Grove Motor Sales Co., Inc., for $300, and a book of coupons to be used in connection with the payments of the monthly installments.

The original paper which Aron signed had on the back of it a credit statement. Neither of the copies of the paper delivered to Aron had such a statement indorsed upon it. However, one of the copies of the agreement delivered to Aron had the following printed upon the back thereof:

" To the Dealer

" This copy, of the Agreement on the reverse side hereof, is sent to you with our check for the unpaid balance due on the Motor Vehicle described therein.

" By endorsement of the check, title is transferred to us and WITHOUT RECOURSE TO YOU.

" If this is your first deal under this plan we know you will be surprised at its simplicity and the low cost to the purchaser.

" You will probably be interested to know that this plan is available to you direct — that your deferred sales may be telephoned to us and when approved you may write up the transaction on our form, send it to us and receive a check.

" A supply of forms will be sent to you on request.

" Thank you.

" THE MORRIS PLAN INDUSTRIAL BANK OF NEW YORK
33 W. 42nd Street, New York, N. Y.
Lackawanna 4-6300

" Note.— NEW JERSEY DEALERS — Please mail Bill of Sale form promptly to the above address."

Aron states that he was not requested to deliver a copy of the paper to the Grove Motor Sales Co., Inc., and the defendant's manager, when asked whether he had asked Aron to deliver the so-called dealer's copy of the paper to the dealer, said: " I most likely did. I cannot be very definite. It is routine matter and we invariably say ' this agreement and check is to be delivered to the dealer.' "

Printed on the back of the said $300 check, drawn by the defendant to the order of the Grove Motor Sales Co., Inc., was the following:

" FOR VALUE RECEIVED, the payee by endorsement hereof, does hereby sell, assign and transfer to THE MORRIS PLAN INDUSTRIAL BANK OF NEW YORK, its successors or assigns, all rights, title and interest in and to an Agreement dated August 25, 1936 covering the sale of motor vehicle — Chevrolet

Make

2EC-3 — 10863     M4918461          and hereby authorizes
Serial Number      Motor Number

the said THE MORRIS PLAN INDUSTRIAL BANK OF NEW YORK to do every act and thing necessary to enforce the terms thereof.

" Moreover, the payee warrants that at the time of the sale of said motor vehicle the payee had good title thereto and good right to transfer title thereto."

The said book of coupons delivered by the defendant to Nathan Aron had printed on the front cover thereof the following:

" THE MORRIS PLAN INDUSTRIAL BANK OF NEW YORK
" Nathan D. Aron          ·          CA423

" INSTRUCTIONS

" This book must always be presented with each payment made at the receiving window. If payments are made by mail, do not send this book, but tear out top coupon or coupons at dotted line

amounting to your remittance and send with check, postal or express money order. *Do not send cash by mail.*

" No payments accepted at window after 5 P. M., Saturdays, 1 P. M.

" Payments may be made at any office listed on inside back cover.

" Payments sent by mail will be returned unless coupons covering amount sent are enclosed."

and the office listed on the inside of the back cover of the book was a list of offices of the Morris Plan Industrial Bank of New York.

Upon receipt of the two copies of the paper, which he had signed, and the coupon book, and the check, Nathan Aron, or his representative, called at the office of the Grove Motor Sales Co., Inc., on the same day, and delivered to the salesman there, who had negotiated the sale of the automobile to him and his brother, the said check for $300, together with another check for $119.30, and also apparently turned in a Graham-Paige sedan and was allowed $35 for it, and received a Chevrolet automobile, together with an invoice, reading as follows:

" Original

Tel. Glenmore 5 { 4800 4801 4802 4803 4804

INVOICE
GROVE MOTOR SALES CO., INC.
1511 Bushwick Ave., Brooklyn, N. Y.
3053 Fulton St., Brooklyn, N. Y.

Mr. H. Miller                                                    August 25th, 1936.
Salesman

Sold to Mr. Meyer and Nathan Aron,
669 Berriman St.,
No. 3420                                                   Brooklyn, N. Y.

| Model | New or Used | Serial No. | Motor No. | Description | Amount |
|---|---|---|---|---|---|
| | Used | 2EC03–10863 | M4918461 | Chevrolet Stand. Coach..... | $450.00 |
| | | | | This car is not guaranteed | |
| | | | | City Tax................... | 8.30 |
| | | | | License Plates PD. $7.00 | |
| | | | | Total............... | $458.30 |
| | | | | Settlement Note | |
| | | | | Deposit.................... | 4.00 |
| | | | | Trade in Graham Paige Sedan.................... | 35.00 |
| | | | | Due on Delivery........... | 419.30 |
| | | | | Total............... | 458.30 |
| | | | | Received Payment — By check $300 By check 119.30 | |

Grove Motor Sales Co., Inc.
Per Herman Miller.

IMPORTANT — IN BILLING CARS ALWAYS SHOW MOTOR AND SERIAL NUMBER."

The check for $300 was indorsed by Grove Motor Sales Co., Inc., to the order of the Manufacturers Trust Company. The indorsement was made by a girl clerk, who apparantly had charge of making the entries in the books of the dealer, stamping the check with a rubber stamp reading " Pay to the Order of Manufacturers Trust Company GROVE MOTOR SALES CO., INC." So far as the evidence shows, no officer of the Grove Motor Sales Co., Inc., ever saw this check or had anything to do with its indorsement and the transaction was entered upon the books of the Grove Motor Sales Co., Inc., as a cash transaction. No one connected with the Grove Motor Sales Co., Inc., ever had anything to do with the preparation of the so-called conditional sales agreement and there is no evidence that any one connected with that corporation ever saw the agreement or a copy of it.

The Grove Motor Sales Co., Inc., had, in fact, no conditional sales agreement with Nathan Aron, and, as above stated, the transaction was entered on its books as a cash transaction, and the testimony of the employees of the dealer unequivocably establishes that fact.

The defendant's contention is that it did not make a loan of $300 to Nathan Aron on August 25, 1936, but that it purchased an existing conditional sales agreement from the Grove Motor Sales Co., Inc.

The plaintiff claims that the transaction was in the nature of a loan for which his assignor, Nathan Aron, agreed to pay and did pay interest at the rate of nine per cent per annum, and he, therefore, as the assignee of said Nathan Aron, sues to recover, under the Banking Law, twice the amount of interest paid by Aron upon the loan. The amount sued for is $54. The plaintiff states, however, that there are similar transactions amounting to approximately $6,000,000, and the defendant, in its brief, states that it has financed the purchase of motor vehicles to the extent of $8,622,000, although it does not state that the financing was done under the same conditions as prevail in this transaction. These other transactions, however, should not be considered in deciding this action. This action should be decided and is decided without regard to any transaction other than the one involved herein.

The defendant claims that section 293-a of the Banking Law did not go into effect until June 30, 1937, and that it does not, therefore, apply to this transaction. It overlooks, however, the fact that substantially the same provisions as are found in section 293-a of the Banking Law were embodied in a section, which in August, 1936, was known as section 114 of the Banking Law. This section provided that " Every bank and every private

and individual banker and every investment company organized under article seven of chapter three hundred and sixty-nine of the laws of nineteen hundred and fourteen, as last amended by chapter two hundred and twenty-seven of the laws of nineteen hundred and seventeen, may take, receive, reserve and charge on every loan and discount made, or upon any note, bill of exchange or other evidence of debt, interest at the rate of six per centum per annum * * *. The knowingly taking receiving, reserving or charging a greater rate of interest shall be held and adjudged a forfeiture of the entire interest which the note, bill of exchange or other evidence of debt carries with it, or which has been agreed to be paid thereon. If a greater rate of interest has been paid, the person paying the same or his legal representatives may recover twice the entire amount of the interest thus paid from the bank or banker or investment company taking or receiving the same, if such action is brought within two years from the time the excess of interest is taken."

In January, 1936, in an action pending in the Supreme Court, New York county, brought by Wellington Rindge, plaintiff, against this defendant, Index No. 40566–1935, the defendant contended that it was an industrial bank and that, therefore, it was entitled to the benefits of section 114 of the Banking Law, and that the only remedy of a person paying usurious interest to it was to recover twice the amount of such interest paid. The court so held. (See *Rindge* v. *Morris Plan Industrial Bank*, N. Y. L. J. Jan. 10, 1936, p. 178; affd., 248 App. Div. 700.)

In my opinion, the plaintiff is correct in his claim that the defendant made a loan to the plaintiff's assignor in the sum of $300 on August 25, 1936, for which it charged $27 interest, which amounted to interest at the rate of nine per cent per annum, and that it did not purchase a conditional sales agreement from the Grove Motors Sales Co., Inc.

As was said in *Quackenbos* v. *Sayer* (62 N. Y. 344, 346): " The transaction must be judged by its real character, rather than by the form and color which the parties have seen fit to give it. * * * Courts have been astute in getting at the true intent of the parties, and giving effect to the statute."

It sufficiently appears, as above stated, that the Grove Motor Sales Co., Inc., never drew the so-called conditional sales contract, saw it, or made the price stipulated therein. On the contrary, the Grove Motor Sales Co., Inc., treated the matter throughout as a cash transaction and the sales price of the car, $450 instead of $477, and its invoice or bill of sale shows the sale as having been one made to Meyer Aron and Nathan Aron, and not to Nathan Aron alone.

This so-called conditional sales agreement, which the defendant had the plaintiff's assignor execute, is, to my mind, a device by which the defendant sought to and did make a loan to the plaintiff's assignor at a rate of interest of more than six per cent per annum, and also a method by which the defendant attempted to obtain collateral for its loan.

I, therefore, find:

1. That the transaction in question was in the nature of a loan made by the defendant to Nathan Aron, the plaintiff's assignor, and not a purchase by the defendant from the Grove Motor Sales Co., Inc., of a conditional sales agreement.

2. That the defendant charged and received from Nathan Aron, the plaintiff's assignor, interest at the rate of nine per cent per annum upon the said loan of $300 which it made to the said plaintiff's assignor on August 25, 1936, and is, therefore, subject to the penalty provided for in what is now section 293-a of the Banking Law, which came into effect on June 10, 1937, prior to the making by the plaintiff's assignor, Nathan Aron, of the final payment on account of the loan, and also provided for under section 114 of the Banking Law as it existed on August 25, 1936, the date the loan was made. The rights and remedies of the plaintiff under both of said sections of the Banking Law are precisely the same.

The motions of the defendant, made at the trial, to dismiss the plaintiff's complaint are denied and judgment is directed in favor of the plaintiff and against the defendant in the sum of fifty-four dollars.