### TOWSLEE vs. DURKEE and others.

The words "legal interest," when used in pleadings, may mean either the highest rate allowed by law on special contract, or that which is fixed by law in the absence of such contract; and where the context clearly shows that they are used in the former sense, they ought not to be construed in the latter.

Where a lender made it a condition of a loan in this state, that the borrower should pay exchange on New York, in addition to the highest rate of interest allowed by law on special contract, and this was done solely for the purpose of obtaining such excess, and with the understanding that the note was not to be paid in New York, but in this state: *Held*, that the contract was usurious.

*Rock River Bank v. Sherwood*, 10 Wis., 230, cited and distinguished.

Since the usury act of 1859, it is not necessary that a defendant should either aver or prove a tender of the principal sum loaned, in order to avail himself of the defense of usury.

APPEAL from the Circuit Court for *Kenosha* County.

This action was brought in August, 1859, on a promissory note for $2,000, dated December 1st, 1857, made by the defendants, payable to the order of the plaintiff, twenty-eight months after date, with interest at 12 per cent. per annum, payable semi-annually. The plaintiff claimed to recover $240, being the two installments of interest which became due December 1st, 1858, and June 1st, 1859.

The defense was usury, and the answer alleged that on the 29th of May, 1855, the defendants, to secure the payment of $3,800 loaned to them by the City Bank of Kenosha, (which was organized under the banking law of this state), executed their note for that sum, payable at 60 days, indorsed by one William White, which note was renewed every 60 days thereafter, by a note of like amount with the same indorser, until the 15th of October, 1856, when the sum of $200 (balance due upon another loan of $1,100) was

added, making the note $4,000; and such note for $4,000 was renewed in like manner every 60 days, until the 26th of August, 1857, when the defendants paid thereon $500 in cash, and gave their note, with the same indorser, for $3,500, at 60 days. The answer further alleged, that on the 19th of September, 1855, the defendants, to secure a loan of $2,500 from said bank, executed a note for that sum, indorsed by said White, payable at 60 days, which was renewed every 60 days thereafter, until the 15th of October, 1857, when it was renewed by a note for the same sum, payable in 45 days from date.

The answer further alleged, that said note for $3,800, dated May 29, 1855, and that for $2,500, dated September 19, 1855, were payable to the order of said White at an office in Wall street, New York; that said notes were made by the defendants, and the money advanced to them thereon by said bank, at the dates thereof, at the city of Kenosha; and that at the time of the execution thereof it was corruptly agreed between said bank and the defendants, that the defendants should pay, in addition to the legal rate of interest, the amount of the exchange upon New York, which was, at the dates of said notes, and at the maturity thereof, 1 1–4 per cent.; and that the loans were made to the defendants by said bank, expressly upon the condition that they were to pay therefor, in addition to the legal rate of interest, the exchange upon the city of New York, which the defendants promised to do; that the payee White was a resident, and in business in said city of Kenosha, and said bank, which was at all times the real owner of said notes, had its place of business in said city; that said notes were never intended to be paid in the city of New York, but were kept at said bank until their maturity, and were then renewed in manner aforesaid; and that it was at all times understood between the said bank and the defendants, that the business should be transacted in that manner; that at each of the renewals of said notes, the defendants, in like manner, corruptly agreed with said bank to pay, in addition to the legal interest, the exchange upon New York, as aforesaid, which agreement was expressed in each of said notes; and

that the corrupt agreement made upon the loaning of said moneys, in regard to the payment of exchange upon New York, was made by said bank with intent to exact from the defendants the payment of more than legal interest upon the moneys so loaned; that all of said notes were payable to the order of said White, and by him indorsed to said bank, but that he had no interest whatever in the money advanced upon the first named of either of said series of notes, but was an indorser for the accommodation of the defendants; that at none of the renewals of said notes was any money advanced or loaned to the defendants; but that the sole consideration for both of said series of notes, was the sums of money loaned by said bank to the defendants as above stated.

The answer further alleged, that on or about the 1st of December, 1857, the said two notes for $3,500 and $2,500, respectively, were surrendered by the bank to the defendants, who thereupon, in consideration thereof, and for no other consideration, executed three new notes for $2,000 each, payable in twenty-seven, twenty-eight and twenty-nine months, respectively (one of which is the note mentioned in the complaint), and another for $185 58, payable in thirty months from that date; "that said note for $185 58, was given for interest and usurious exchange upon the two notes for $3,500 and $2,500, between the maturity of the same and the 1st day of December, 1857;" that said four new notes, at the request of said bank, were made payable to the order of the plaintiff, who was the president of said bank, to whom the corrupt and usurious agreements above set forth were well known; that said notes were still the property of said bank, or if, for any purpose, nominally the property of the plaintiff, were taken by him with full knowledge that the agreements made when the money was loaned, as before specified, were corrupt, usurious and void, and made with intent to exact from the defendants the payment of a large excess above the interest allowed to be taken by law, and were received and held by him to avoid the defense of usury, and to allow said new notes to draw

larger interest than they could have drawn had they appeared to be the property of said bank.

To this answer the plaintiff demurred, on the ground that it did not state facts sufficient to constitute a defense, and specified the following objections: 1. It did not show that any illegal interest had been paid by the defendants, or reserved by the plaintiff, on the notes in question, or received thereon by the plaintiff or the bank. 2. It did not show that any money had been reserved or agreed to be taken or paid contrary to law, nor that the place of payment named in the notes mentioned in the answer was not fixed at the request of the defendants, and for their accommodation. 3. It did not allege a tender of the principal sum loaned, according to law.

The circuit court made an order sustaining the demurrer, from which the defendants appealed.

*O. S. & F. H. Head*, for appellants:

The contract to enforce which suit is brought, was made in 1855, and so far as concerns its construction and validity must be governed by the law in force when the contract was made, chap. 172 of Laws of 1851; since new notes, given without any new consideration, to take up or renew notes previously given, are subject to all defenses which might have been interposed to the original notes, when such new notes are in the hands of the original party, or of a subsequent purchaser with notice. *Tuthill vs. Davis*, 20 John., 285; *Powell vs. Waters*, 8 Cow., 696; *Hackley vs Sprague*, 10 Wend., 113. If the note was originally tainted, no tender of the principal sum is necessary because of the subsequent statute. *Folsom vs. Blake*, 3 Edw., 442. 2. A note made payable in the city of New York, when the place of payment is not so fixed for the accommodation of the borrower, or at his request, and upon which money is loaned *upon condition* that the borrower shall pay, in addition to the interest allowed to be taken by law, exchange upon New York, is usurious. *Marvine vs. Hymers*, 2 Kern., 233–235; *Oliver Lee & Co.'s Bank vs. Walbridge*, 19 N. Y., 143, 145; *Meritt vs. Benton*, 10 Wend., 116; *Seneca County Bank vs. Schermerhorn*, 1 Denio, 133; 3 McLean, 601.

*Webster & Schoff,* for respondent:

1. It is not alleged in the answer that the defendants, at any of the renewals of the notes, paid any portion of the exchange, nor that the same is included in the new notes upon which this suit was brought, nor that the plaintiff or the City Bank ever required the payment thereof. 2. Usury is not predicated, in the answer, upon the exaction of 12 instead of 10 per cent. interest, but only upon the reservation of the exchange on New York; and it is understood that the denial, in the answer, of the plaintiff's ownership of the notes, was made only to allow the defendants to interpose the plea of usury as to that exchange. The agreement to pay exchange is not usurious. (1.) It is not a promise to pay any *certain* sum of money. (2.) It is not a promise to pay any sum whatever *at all events.* By some financial revulsion, exchange might be against and not in favor of New York. (3.) If it was the intention that the notes should remain in the bank at Kenosha, and be paid there, then the bank and the plaintiff are relieved from the charge of usury, because the payment at the bank of the face of the note, with interest, would be a full payment; the reservation of exchange could not be enforced. Hence, if such exchange were paid by the makers, it would be a voluntary payment, and not usury. *Cuyler vs. Sanford,* 13 Barb. (S. C.), 343; *Lee & Co.'s Bank vs. Walbridge,* 19 N. Y., 134; *Portland Bank vs. Storer,* 7 Mass., 433. 3. If the answer states at all what interest the notes drew, it states that they drew *seven* per cent.; for that is the "legal rate of interest." The court cannot know whether the exchange between Kenosha and New York may not have varied from time to time, through the years 1855, '6 and '7, in such a manner that the several payments of exchange added to the seven per cent., would not have amounted to more than the *ten* per cent. interest allowed by law on special contract. The answer should state the precise facts upon which the usury is alleged, and the quantum of usury taken, and shut out every hypothesis which would render the transaction lawful. Van Santvoord's Pleadings, pp. 468, 469; 12 Barb. (S. C.), 601; 3 Hill, 564; Blydenburgh on Usury, p. 110; Clarke's Rep., 361 and 453;

2 Sandf. Ch. R., p. 24; 2 Barb. (S. C.), 56; Howard's New York Code, p. 239. The allegation that the note for $185 58, was for interest and usurious exchange on the two large notes, from their maturity until the 1st day of December, 1857, is too uncertain to constitute a valid defense of usury. What portion of this sum was for interest, and what for exchange, does not appear. All but ten cents may have been for lawful interest, in which case the court would reject it, presuming it to have arisen by mistake.—Counsel also insisted, that the answer should have alleged a tender of the principal sum, and that proof should have been made of such tender, and referred to *Rock River Bank vs. Sherwood*, 10 Wis., 230.

*By the Court*, PAINE, J. The first question as to the sufficiency of the answer in setting up usury, arises upon the construction of the words " legal interest," which it contains. It alleges a loan of money by the bank to the defendants, and a series of renewals ; that at the time of the loan, the note given therefor was made payable at the city of New York, with the express purpose of exacting from the borrowers the amount of exchange " in addition to the legal rate of interest," and that they were required to pay, and did promise to pay, such exchange, as a condition of the loan : while the understanding was that the note should never be paid in New York, but should be kept and paid in Kenosha. The answer further avers that at each of the renewals the same condition was required, and the same corrupt agreement made to pay the exchange on New York "in addition to legal interest," as a mere cover for usury. But it is insisted by the counsel for the respondent, that the words "legal interest," as used in the answer, must be construed to mean interest at the rate of seven per cent., that being the rate fixed by law in the absence of a contract fixing a different rate. If those words require that construction, the answer fails to show usury. But they were obviously used by the pleader in a different sense, and as meaning the highest rate of interest which the law allowed the parties to contract for. And we think they are as often used in this sense as in the

*June Term, 1860.*

TOWSLEE
v.
DURKEE et al.

October 15.

other, and that their true sense in any instance must be determined from the subject matter, and the connection in which they are used. Thus if the inquiry relates to a case where no rate is agreed on by the parties, and the object is to ascertain what rate the law fixes in that event, the words "legal interest," would naturally be understood to mean the rate fixed by law in the absence of a contract. But *if* it relates to a contract claimed to be illegal in providing for more than legal interest, the same words would there just as naturally, be understood to mean the highest rate allowed by law. The very point of the inquiry, namely the validity or invalidity of the contract, would imperatively require that sense. That they are so used in this answer is not only obvious from the entire context, but at the close, where it avers knowledge on the part of *Towslee*, it alleges that he took the note with the full knowledge of the usurious contract, and that it was made with intent to exact " a large excess above the interest *allowed to be taken by law*." It being clear, therefore, that those words are used in this answer as meaning the highest rate at which the parties were allowed by law to contract, and that use being sanctioned by common practice, we think it would be placing a forced construction upon them, to say that they mean interest at seven per cent. Legal interest may as well mean that which is legal by contract, as that which is legal in the absence of a contract. And where the context shows clearly that they were used in the former sense they ought not to be construed in the latter.

The question then remains, whether, with this construction, the answer sets up usury. As before stated, it avers that the bank made it a condition of the loan, that the borrowers should pay exchange on New York over and above legal interest, and the note was made payable there for that purpose, solely with a view of obtaining more than legal interest, and with the understanding that the note was not to be paid in New York, but was to be paid in Kenosha. The same agreement was made at each renewal, and for the same purpose, and with the same lack of intention to have the money paid in New York. We have no doubt the facts

constitute usury. It is true there are cases where exchange between different places has been allowed to be taken in addition to legal interest, where it appeared to have been done in good faith, without any intent to evade the usury law, or where it was done for the accommodation of the borrower himself. But their reasoning implies that where such an arrangement is insisted on as a condition of the loan, and is designed as a mere device by which the lender is to receive more than legal interest, it would be usury. *Marvine vs. Hymers*, 2 Kern., 233; *Merritt vs. Benton*, 10 Wend., 116; *Bank vs. Schermerhorn*, 1 Denio, 133; 3 McLean, 601. In *Stevens vs. Lincoln*, 7 Met., 525, the exacting of exchange as a mere cover for usury is assumed, as a matter of course, to be usurious. In the case of *Oliver Lee & Co.'s Bank vs. Walbridge*, 19 N. Y., 134, the note was discounted in Buffalo, and made payable in New York city, the exchange being in favor of the latter place. It was averred by the defendants, and they offered to show, that the note was made payable in New York merely to enable the bank to obtain the amount of the exchange over and above legal interest. Justices COMSTOCK and ALLEN each delivered an opinion. The former held that it was not usury, for the reason that the law would not take notice of the difference in the value of money at different places in the same state, so as to impute usury to a contract made with a view to obtaining such difference beyond legal interest. But his reasoning would imply that a different rule would prevail between places in different states, particularly those as far distant from each other as New York and Wisconsin. Many of the reasons existing in the case of countries entirely foreign, exist in such a case. And our statute itself recognizes the distinction not only between contracts payable within this state and those payable without, but also between those payable in some adjoining state or territory and those payable in some state or territory not adjoining. It provides for ten per cent. damages in the latter case, on protested bills of exchange, but only five where payable in an adjoining state or territory. This statute does not include promissory notes, and perhaps the general law merchant would not entitle their holders in such

cases to recover the difference of exchange, though there are some decisions that they may. See opinion of Comstock, J., pages 136–7, where he alludes to the conflict of decisions upon this point, and admits that, in justice, promissory notes and bills of exchange ought to stand upon the same footing in this respect. This, therefore, is sufficient to take this case out of his reasoning, and to show that, as between Wisconsin and New York, the difference in exchange is a thing sufficiently tangible and real for the law to recognize it, and to make usurious any agreement made to recover it, over and above legal interest, when made as a mere shift for that purpose and not in good faith. And it may be observed that SELDEN and GRAY, Justices, dissented; and there is certainly much force in the reasoning of Justice JOHNSON, to the effect that such a transaction would be usurious even in New York. *Cuyler vs. Sanford*, 13 Barb., 347. Justice ALLEN also held that there was no usury, but upon different grounds. He seems to rely principally upon the uncertainty as to whether the exchange would be in favor of the place where the note was made payable, when it became due. He alludes also to the fact that this arrangement was not insisted on as a condition of the loan, and says, if that had been done, and the agreement to pay exchange had been expressed in the instrument, he was not prepared to say that it would not have been usury. Now in this case both of those things are alleged to have been done, so that there is nothing in either of the opinions in that case in conflict with the position that this answer discloses usury. And it may be observed, that there is nothing in the mere fact of the uncertainty as to whether the lender will *eventually* gain anything by way of exchange that deprives such a transaction of its usurious character. If he is sure, at all events, of his principal and interest, and stipulates even for a chance for more, it is usury. *Cleveland vs. Loder*, 7 Paige, 557, and cases cited; *Leavitt vs. De Launy*, 4 Coms., 369.

We are fully satisfied, therefore, that this answer sets up facts showing usury. And if it were not so held, it is obvious that not only the spirit but the letter of the usury laws would be entirely subverted. The lender might openly

contract for the payment of exchange on the most distant states, as California or Oregon, in addition to legal interest, exact the payment of it, and yet take no usury. This would be equivalent to a repeal of the law. See also *State Bank vs. Ensminger*, 7 Blackf., 105.

It seems, from the opinion of the court below, that the demurrer to the answer was sustained, not because it failed to show a case of usury, but because it did not aver a tender of the principal sum loaned. And this is based upon the decision of this court in *Rock River Bank vs. Sherwood*, which is said to have decided that precise point. This is a misapprehension of that decision. In that case usury was not averred at all, but the bank having contracted for usurious interest, it was claimed that the entire contract was void, not by the usury law, but for want of power on the part of the corporation to make it. It was said to be as void as would be a policy of insurance issued by the bank. On the other hand, it was contended, that, inasmuch as the bank was authorized to loan money and take securities, if it contracted for more interest than the law allowed, that had the same effect on the contract as would a similar transaction between individuals. And this court sustained the latter view. That was the entire scope of the decision. And that part of the opinion relied on by the court below, simply asserts that the defendant, in order to avail himself of the usury, should have plead it, and then have proved a tender. It does not hold, however, that he should have averred a tender. And this court has expressly decided, in several cases, that this was not necessary, even while the usury act of 1856 was in force. *Platt vs. Robinson; Root vs. Pinney*, not yet reported. But it was also held in the case last mentioned, that the provision in the act of 1856, in respect to proving a tender, (which had been re-enacted in the revision of 1858,) was repealed by the usury act of 1859. It was also held that it was a provision affecting the remedy merely, by imposing a condition which the courts should require to be complied with, before the party could have the benefit of his plea showing an illegality in the contract. And it was further held, as a consequence, that when the law imposing this

condition was repealed, the party was at liberty to avail himself of that illegality, without complying with the condition. It was therefore erroneous for the court below to sustain the demurrer for want of an averment of tender in the answer. And under the law as it then was, and still remains, it was unnecessary for the defendants to prove it.

The order appealed from is reversed, with costs, and the cause remanded for further proceedings.