## CORNELL vs. BARNES and others.

EVIDENCE :    (1-3.) *When defendant incompetent. How objection must be taken. Effect of interest, etc., on credibility of witness.*
USURY :    (4-7.) *When stipulation for exchange renders contract usurious.*
PAYMENT OR TENDER :    (8.) *When actual payment or tender required.*
ERROR :    (9.) *When judgment not reversed for erroneous or defective finding.*

1. In an action for money loaned through the lender's agent, since dead, defendant is not a competent witness as to statements of such agent.
2. But, to exclude the testimony, it must be objected to on the ground that the witness is incompetent; and an objection to particular questions as irrelevant, immaterial or improper, is not sufficient.
3. If the testimony is admitted, without proper objection, the interest of the witness and the death of the agent are facts to be considered in determining the credibility of the evidence.
4. Where exchange is contracted for as a mere mode of obtaining for the use of money more than legal interest, and without any design that the money shall be remitted to the place upon which exchange is provided for, it is usury. Otherwise, where exchange is stipulated for in good faith.

Wis. xxvi—60

5. The question in such cases is, whether there was a corrupt intent, at the time of entering into the contract, to evade the law.

6. Where a person residing in New York loaned money in this state for five years, through an agent residing here, and contracted for the payment of exchange, the fact that in some cases during the five years, money paid as interest on the loan, was re-loaned here, without having been remitted to the lender, would not be sufficient to show a corrupt intent to evade the usury law in making the contract, even if the highest legal rate of interest had been exacted.

7. The facts that the rate of interest stipulated for was two per cent. less than the highest legal rate, and that exchange on New York when the loan was made, and generally for years thereafter, was less than two per cent., conclusively disprove the corrupt intent.

8. To lay a foundation for a claim of *damages* for breach of an agreement to release certain lands from the lien of a mortgage on payment of certain portions of the mortgage debt, the mortgagor must show an *actual tender* of the money, and not merely facts which, for some purposes, might constitute a *waiver* thereof.

9. A judgment for the plaintiff in foreclosure will not be reversed on the ground that the findings of fact by the court are not entirely full and accurate, if it appears from the whole evidence that the judgment is right.

APPEAL from the Circuit Court for *Milwaukee* County.

Foreclosure of a mortgage of certain lands in Racine county, executed December 1, 1854, by the defendants *Orville W. Barnes and wife* to the plaintiff, *Latham Cornell*, securing the bond of said *Orville W. Barnes*, of same date, for $15,000, payable December 1, 1859, with interest at ten per cent. per annum, payable annually, " the interest and principal to be payable at the office of Strong & Fuller in the city of Racine, with the rate of exchange which shall [should] be current at the time of payment on the city of Troy, N. Y., or at the Troy City Bank, at the option of said *Barnes*." The complaint alleges that there is due upon the bond and mortgage $15,000, with interest thereon at ten per cent. from December 1, 1858, less $431.25 paid December 6, 1859, to apply upon the interest for the year ending on the first of that month ; and also claims exchange upon the city of Troy at the rate current at the commencement of the action, which is alleged to be one-half of one per cent. The answer sets up usury,

and alleges, in substance: 1. That for the purpose of obtaining a greater amount for the use of the money lent than the law allowed, *Barnes* was required by the the contract to pay exchange on Troy, while the money, when paid, was not to be transmitted to Troy, but to be reloaned at Racine. 2. That exchange at Racine on Troy, at the date of such bond and mortgage, was one and one-fourth per cent.; on the 1st of December, 1855, one per cent.; on the 1st of December, 1856, one and one-half per cent.; on the 28th of May, 1857, one and one-half per cent.; on the 1st of December, 1856, four per cent.; on the 27th of April, 1858, two per cent.; on the 1st of December, 1858, one and one-fourth per cent.; on the 23d of May, 1859, two per cent.; on the 1st December, 1859, one per cent. 3. That the interest falling due December 1, 1855, was paid on that day; that falling due December 1, 1856, was paid either on that day or on the 28th of May, 1857; that falling due December 1, 1857, was paid either on that day or on the 27th of April, 1858; and that falling due December 1, 1858, was paid either on that day or on the 23d of May, 1859; that these several payments were made at the city of Racine, and that the current rate of exchange thereon was also paid at the same times. 4. That plaintiff, at the time of said $15,000 loan, was interested in the affairs, property and success of the Racine & Mississippi Railroad Company, and in property contiguous to its road, whose value would be enhanced by the success of the company; and, as a condition precedent to said loan, for the purpose of promoting his own interest and oppressing the plaintiff, and obtaining more than the legal rate of interest, he required that *Barnes* should subscribe for and take six shares of stock in said road at $100 per share, and pay $200 out of the loan, on his subscription, which stock then was, and was well-known by plaintiff and his agents and attorneys to be, of less than par value, and was decreasing in value, and

became worthless; and this agreement was carried out, and $200 paid on his subscription by *Barnes* out of the money loaned.

The answer further alleges by way of set off, that, contemporaneously with the execution of the bond and mortgage declared on, the plaintiff entered into a written agreement with *Barnes*, that the latter might have the privilege of paying $5,000 of the sum loaned, at any time he might wish, in installments of not less than $1,000 each, and that upon the payment of each $1,000, one hundred acres of land should be released and discharged from the mortgage; and that afterwards, at various times, plaintiff refused to perform this agreement, to defendant's damage $25,000.

There was a reply, from which it appears that at the time of the execution of the bond ·and mortgage in suit, *Barnes* was indebted to the plaintiff on a previous mortgage to him to secure the payment of $3,000 with interest at 12 per cent. per annum, with the rate of exchange current at the time of payment between Racine and Troy, N. Y.; and was also indebted to plaintiff on a mortgage made to one Charles R. Cornell, to secure the payment of $3,000 and interest at 12 per cent.; that the amount due plaintiff, December 1, 1854, on these two instruments, by their terms, *including the exchange* stipulated for in the former, was included in the consideration of the $15,000 bond and mortgage in suit. It appears from the evidence that the $3,000 mortgage to plaintiff was executed April·15, 1850, and that to Charles R. Cornell, April 15, 1851. The reply further admits the agreement set up in the answer as to a release and discharge of certain quantities of land from the mortgage upon certain payments being made; but it denies any breach of the agreement by plaintiff.

The court found as a fact, among other things, that the plaintiff's agreement to release certain quantities of land, upon certain payments being made, had been

waived by the defendant *Barnes*.   It also found that
a certain agreement between *Barnes* and Marshall M.
Strong, Esq. (put in evidence for the defense), in rela-
tion to a subscription by the former to stock of the
Racine & Mississippi Railroad Company, was un-
authorized by the plaintiff, and that he had no know-
ledge thereof until the commencement of this action.
It found also that plaintiff, at the time the bond and
mortgage were made, resided at Troy, N. Y.   The
other findings need not be stated.   The court held
the bond and mortgage valid, and rendered judgment
for the plaintiff as demanded ; from which the defend-
ants *Barnes and wife* appealed.

*Peter Yates, Paine & Millet,* and *I. P. Walker,* for ap-
pellants, argued that the agreement to pay exchange,
which, together with the rate of interest named, *might*
amount to more than the highest legal rate, when the
money was not in fact to be remitted to Troy, but was
intended to be retained at Racine and reloaned there,
rendered the contract usurious under the act of 1851.[*]
*Towsley v. Durkee,* 12 Wis. 480 ; *Durkee v. City Bank of
Kenosha,* 13 id. 216 ; *Rock Co. Bank v. Wooliscroft,* 16
id. 22 ; *Morton v. Rutherford,* 18 id. 298.    2. They
contended that the compelling *Barnes* to subscribe for
six shares of worthless railroad stock, as a condition
of the loan, and his payment of $200 therefor, was
usury, being " a loss imposed upon the necessities of
the borrower " for the benefit of the lender.   3. They
insisted that the evidence showed a breach of plain-
tiff's agreement to release a part of defendant's land,

---

[*] Ch. 172, Laws of 1851, provides (sec. 1) that it shall be competent
for parties to contract for the payment and receipt of a rate of interest not
exceeding twelve per cent., but that the rate, if it exceeds seven per cent.,
must be clearly expressed in writing.   It further provides (sec. 4) that " all
bonds, bills, notes, assurances, conveyances, all other contracts or securi-
ties whatsoever," with certain exceptions, " and all deposits of goods or
other things whatsoever, whereupon or whereby there shall be reserved or
taken, or secured, or agreed to be reserved or taken, any greater sum or
value, for the loan or forbearance of any money, goods or things in action
than as above prescribed, shall be void."                          Rep.

and damages accruing from such breach.    4. The find-
ing of the court as to that agreement being waived is
contrary to the pleadings, as well as entirely unsup-
ported by the evidence.    Such a finding is a nullity.
*Patterson v. U. S.*, 2 Wheat. 221.    Under an averment
of performance of a covenant, an excuse for non-per-
formance is inadmissible.    *Oakley v. Morton*, 11 N. Y.
25.    5. It was not necessary that there should be an
*actual tender* of the money, to render plaintiff liable in
damages for a refusal to perform his agreement.    His
previous refusal constituted a waiver.    *Blight v. Ashley*,
Pet. C. C. 15;   *Barker v. Packenhorn*, 2 Wash. C. C.
142;   *Holmes v. Holmes*, 9 N. Y. 525.

   *C. E. Dyer*, with *H. L. Palmer*, of counsel, for re-
spondent, to the point that the stipulation for exchange
did not render the contract usurious, cited *Durkee v.
City Bank of Kenosha*, 13 Wis. 221;   *Central Bank v. St.
John*, 17 id. 166 ; and distinguished   *Towslee v. Durkee*,
12 Wis. 480, and *Rock Co. Bank v. Wooliscroft*, 16 id. 23.
They also contended that the testimony of *Barnes* as
to conversations with and statements of the agent, Mr.
Strong (who was not living at the time of the trial),
should be stricken out (Laws of 1865, ch. 305;   Laws
of 1867, ch. 41) ; that the burden of showing, by com-
petent evidence, the usurious intent in stipulating for
exchange, was upon the defendant (*Buckingham v. Mc
Lean*, 13 How. 171 ;   *Andrew v. Pond*, 13 Pet. 65) ; and
that the proof in fact showed clearly that there was
no such intent.    2. The rights of the plaintiff cannot
be affected by any arrangement between his agent and
*Barnes*, without plaintiff's knowledge or consent, in
reference to a subscription by *Barnes* for railroad stock.
*Condit v. Baldwin*, 21 N. Y. 219 ;   *Baxter v. Buck*, 10 Vt.
548 ;   *Fay v. Lovejoy*, 20 Wis. 407 ;   *McFarland v. Carr*,
16 id. 259; *North v. Sergeant*, 33 Barb. 350.    3. In
respect to the alleged breach of the agreement to
release, counsel argued : first, that no proposition by
*Barnes* to pay $1,000, and have 100 acres released, was

shown by the evidence; secondly, that no *actual tender* was shown; thirdly, that if there was a breach, no damages were proven; and fourthly, that the repeated acts of *Barnes* subsequently, recognizing the mortgage as a valid lien upon the land for the full amount of the mortgage debt, was a *waiver* of any rights secured to him by such agreement, and of all claim to damages.*

PAINE, J. It is not claimed in the answer that including the exchange due upon one of the old mortgages, according to its terms, in the present mortgage, constitutes usury. That mortgage was given in 1850, when the law in force allowed any rate of interest for which the parties chose to contract; consequently no question as to usury could arise upon it.

But it is claimed that the present mortgage is usurious, because, in addition to the ten per cent. interest, it stipulates for exchange current at the time of any payment on the city of Troy, New York, where the mortgagee resided. It is alleged in the answer, and was attempted to be proved on the trial, that this was done, although it was understood that the money was not to be remitted to Troy, but was to be retained by the plaintiff's agents in this state, to be re-loaned here. The only proof offered of any such understanding was that of *Barnes* himself, who attempted to show it by swearing to the statements of Strong, the agent of the plaintiff, who is now dead. The agent being dead, so that his testimony could not be had, it was incompetent for the defendant to testify upon that point. Laws of 1865, ch. 305. And if the objection had been made, his testimony as to the conversations of Strong, not only upon this subject but

---

* As the evidence in this action fills 120 pages of the printed "case," the reporter is compelled to omit it, although the arguments of the counsel relate largely to its character and effect, and it is commented upon at some length in the opinion.                                   REP.

upon many others, ought to have been excluded. But the specific objection that he was not a competent witness, because the agent with whom he transacted the business, and about whose statements he was testifying, was dead, does not seem to have been made. And that was necessary in order to raise the question. A general objection to particular questions that they were irrelevant, or immaterial, or improper, was not sufficient.

But, permitting his testimony to go for what it is worth, it seems very clear that there was no usury in this mortgage by reason of the stipulation for exchange —conceding that where exchange is contracted for as a mere mode of obtaining more for the use of the money than legal interest, and without any design that it shall be remitted to the place upon which exchange is provided, it would be usury. Where such is not the case, and the exchange is stipulated for in good faith, as payment for the transportation of the money, it does not make the contract usurious, even though in addition to the highest rate of interest allowed by law. In such case it is not paid as interest. It is not paid for the use of the money. But it is paid only as the expense of making the payment itself at the place where the parties might have contracted that it should be made. *The Central Bank of Wisconsin v. St. John*, 17 Wis. 157.

The question, therefore, in every such case depends entirely upon the fact whether the exchange is stipulated for with a corrupt intent to evade the statute against usury, and to really get more interest than the law allows to be taken, by calling it exchange. Even if this contract had stipulated for the highest rate of interest allowed by law, no such corrupt intent could be assumed here upon the whole evidence. *Cornell*, the mortgagee, resided in Troy. Although he had agents in this state who were loaning his money, and although that which was collected may have

been sometimes re-loaned here without having been remitted to Troy, yet it appears that the agents were in the habit of remitting from time to time, according to the exigencies of the business. And it is wholly improbable, notwithstanding anything testified to by *Barnes*, that Strong made any statements showing any fixed or distinct intention that this loan, which had five years to run, was not to be remitted to Troy, but was to be re-loaned here. The utmost effect that can be given to this evidence is, to show that he may have learned from the conversation of Strong the general fact, that moneys collected by the agents were often re-loaned without being remitted. But, notwithstanding that, it is incredible that the plaintiff had any distinct or fixed intention that the same state of things should continue for five years, and that this money, when paid, should also be re-loaned without regard to the exigences of his business at that time. It is but reasonable for a man always to assume that he may need money to be paid to him, in the future, where he resides. It is but reasonable for him to provide that the payments shall be transmitted to him there, so as to leave himself the option to have it done if he should desire it. And where that is all that is done, the mere general fact that he at times exercised the option to have the money re-loaned, without being actually remitted, would not be sufficient to show the corrupt intent necessary to constitute usury.

But here it is not necessary to rely upon this reasoning. A conclusive answer to the claim of a corrupt intent to evade the statute, and obtain more than legal interest, is found in the fact that, while the law allowed the parties to contract for twelve per cent., this contract only requires ten; and the current rate of exchange at the time it was made, and for three years after, as appears by the allegations of the answer itself, was less than two per cent. Two per cent. was more than the usual rate. And although at one time

during the five years it exceeded that rate, yet the fact has no tendency to counteract the effect of the other fact, to show conclusively that in contracting for exchange there could have been no corrupt intent to evade the usury law; because the contract as drawn, including exchange at the rate then current, and at any rate that would probably be current, called for a less amount than might have been contracted for directly as interest.

The claim, also, that there was usury by reason of attaching the stock subscription by the defendant as a condition of the loan, seems to us a mere pretext. There was no proof on this subject, except the testimony of *Barnes*, as to his conversations with Strong, which was incompetent, if it had been objected to. But giving his statements all the effect that they can justly be entitled to, they will warrant no inference more favorable to this defense, than that Strong may have used the power he had in respect to this loan, as a means of inducing the defendant to subscribe for the railroad, an object in which he was at that time deeply and actively interested. But that was a matter between *Barnes*, Strong and the railroad company, with which the plaintiff had nothing to do, and in which he had no interest. For the claim that Strong admitted that he had loaned the plaintiff's money on inadequate security in Racine, and that the stock subscription was made a condition of the loan on behalf of the plaintiff, with a view to enhance the value of property generally by building the railroad, and thus rendering the security adequate, is too far-fetched and preposterous to be entitled to a moment's credit.

The fourth defense, alleging a failure by the plaintiff to comply with the agreement to release portions of the property, as therein set forth, was not sustained by the proof. The agreement was, that *Barnes* might pay $5,000 at any time, in installments of not less than $1,000 each; and that, " *on the payment of each*

*one thousand dollars,* one hundred acres of the land should be released," etc.   It was not agreed that the land should be released before payment, for the purpose of enabling *Barnes* to effect a sale to raise money to make a payment.   In order to put the plaintiff in default, he was bound to pay, or tender at least, a thousand dollars.   He never paid or tendered anything. He seeks to avoid the effect of this want of compliance with a condition precedent on his part, by swearing that Strong said that he would not accept the money nor release the land.   But though, for some purposes, a tender may be waived or dispensed with, for others it cannot be.   Thus, if one contracts to convey land on payment of the price, the party, in order to compel a conveyance, must pay or tender the price, even though before the appointed time the other should say, generally, that he would not comply with the contract.   So, in order to lay a foundation for damages for not releasing upon payment, the party should show a payment or tender.   Without this the other party is in no default   It may well have been that, though he had stated generally that he would not comply, yet when the other party actually complied with the contract on his part, he would have changed his mind rather than incur the responsibilities of a default.

We may say further, that the testimony of *Mr. Barnes* seems to us exceedingly improbable in several particulars, and it so happens that they all relate to defenses attempted to be established solely by his own testimony, growing out of transactions with a deceased agent, whose testimony cannot be had to contradict him.   The improbability of his pretense, that the ground of insisting on his stock subscription was to improve the security on loans of the plaintiff already outstanding, has already been alluded to.   His claim that Mr. Strong refused to comply with this agreement to release in case the five thousand dollars were paid, we regard as another instance.   There

could have been no adequate motive for such a refusal, ·as the remaining land was ample security for the balance of the loan, and was so regarded, or the agreement to release would not have been made. The high character of Mr. Strong, who was well known· to the people of this state and to the members of this court, seems also to speak for him when he is unable to speak for himself, and repels the assertion that he would thus violate a plain agreement, as unfounded and improbable.

Another instance is found in the strange, if not suspicious, character of *Barnes'* statements as to those persons who were ready to purchase his lands. They seem to have appeared for the occasion, and to have vanished without leaving any trace. Who or what they are · he does not know. But they were there with the money in hand, ready to pay him $2,400 for 480 acres of the land. And he lost the sale because Strong refused to release. It is not explained why that fact should have had so damaging an effect. It is certainly unusual and seems altogether unnecessary, that an existing incumbrance upon land should defeat a sale to parties who had the money, and did not need to mortgage it to obtain the means of payment An arrangement could very readily have been made, by depositing enough to cover the mortgage, that would have secured all parties, and have accomplished the sale, ·notwithstanding the incumbrance, if there were any purchasers really desirous of obtaining the property.

We are sorry this testimony of *Mr. Barnes* as to transactions with Mr. Strong was not properly objected to, so as to have been excluded. But although this was not done, the grounds upon which the law would have rendered him incompetent upon these points cannot be without their effect in determining upon his credibility. He is the party in interest, seeking to repay a loan of $15,000, that has been running at interest unpaid for more than ten years, by the defense of usury, and by a claim for

damages which he roundly estimates at the sum of $50,000, on account of a refusal to release a portion of the land from the mortgage, by a deceased agent of the plaintiff. The law considers the temptation of one so situated to falsehood, so great, where he is not held in check by the liability to contradiction by the other party to the transaction on which he bases his defense, that it disqualifies him as a witness. And though the objection was not so taken as to exclude the testimony, yet these considerations, joined to the extreme improbability of his statements in the particulars referred to, have led us to the conclusion that they were not only incompetent in law but incredible in fact.

We think that, upon the evidence, the defenses entirely fail, and that, whether or not the findings of fact are entirely full and accurate, the judgment is correct, and must be affirmed.

*By the Court.*—Judgment affirmed.

Upon a motion for a rehearing, *William P. Lynde,* of counsel for the defendant *Barnes,* argued that the stipulation for the payment of exchange upon Troy, in addition to ten per cent. interest, rendered the contract usurious; that it was entirely immaterial whether the money was to be reloaned in this state or remitted to Troy, N. Y., the place of the lender's residence ; that if the lender, residing in another state, sends his money to this state and loans it here, he has no right to impose upon the borrower the expense of remitting the money to him, if that expense, added to the rate of interest agreed upon, amounts to more than the highest rate of interest allowed by the law of this state ; that if the stipulation is to pay the current rate of exchange at the time payments of principal or interest are made, without any limitation of the amount to be so paid, the mere chance thus reserved for requiring of the borrower a greater amount than

the highest legal rate of interest, renders the agreement usurious, whatever may be the rate actually prevailing at the time of the loan, or whatever the probabilities at that time as to the rates of exchange during the term of the loan. In support of these views he cited *Towslee v. Durkee*, 12 Wis. 480; *Cleveland v. Loder*, 7 Paige, 557; *Leavitt v. Delauney*, 4 Coms. 363; *Chippendale v. Thurston*, 4 Car. & P. 98; *Barnard v. Young*, 17 Ves. 44; *Thomas v. Murray*, 34 Barb. 157; *Rock Co. Bank v. Wooliscroft*, 16 Wis. 22; and a recent case decided in the U. S. circuit court for Wisconsin, "where the defense was usury, the bond requiring exchange to be paid to the lender residing near Boston, Mass.," in which case Judge MILLER is represented to have said: "It is well settled that upon a contract for the loan of money, the lender is not at liberty to stipulate even for a contingent benefit beyond the legal rate of interest, if by the terms of the agreement he has a right to the repayment of the money loaned, with the legal rate of interest thereon, at all events. (2 Parsons on Con. 103, 405; *Cleveland v. Loder*, 7 Paige, 557.) A stipulation even for a chance of advantage beyond legal interest is illegal. A profit made, or loss imposed, on the necessities of the borrower, whatever form, or shape, or disguise it may assume, when the treaty is for a loan and the capital is to be returned at all events, has always been adjudged to be so much profit taken upon a loan, and to be a violation of those laws which limit the lender to a specified rate of interest. In the case under consideration, the money was in Milwaukee when it was advanced, and there the plaintiff agreed to receive in the same funds, as to their par value, that he advanced, with the highest rate of interest, and one per cent. added. The note is not payable in Boston, with exchange, but in Milwaukee. There is no proof in explanation of the reason for making the note payable with exchange. Neither party requested it. The

note was thus drawn and signed. In the absence of proof on the subject, the mere fact of the payee's residence being near Boston will not relieve him from the imputation of indirectly contracting for a greater profit on the loan than the law allowed; and this case comes fully within the prohibition of the statute. I think the note usurious on its face, as a contract for a greater sum for the loan of money than twelve per cent. A usurious interest is inferable from the contract."

*Fuller & Dyer*, for the plaintiff, contended, in reply, that "usury is a matter of intention, and, to render a contract usurious, both parties must be cognizant of the facts constituting the usury, and have a common purpose of evading the law" (*Otto v. Durege*, 14 Wis. 574; *Fay v. Lovejoy*, 20 id. 407; 1 Hill, 227; 1 Barb. Ch. 44; 9 Ind. 140; 3 Gill & J. 123; 7 id. 44; 1 R. I. 151; 2 Harrison (N. J.) 191; 4 McLean, 360; 1 Dall. 217; 2 id. 92); that if the position taken for the defendant were true, then in every case where a purchaser of goods or borrower of money agreed to pay exchange in addition to interest, he might be making a usurious contract, however innocent of any such intent; that, on the contrary, even where the highest legal rate of interest is otherwise to be paid, exchange may be stipulated for, in good faith, as payment for the transportation of the money, and the contract is not usurious (*Towslee v. Durkee*, 12 Wis. 487; *Marvine v. Hymers*, 2 Kern. 233; *Merritt v. Benton*, 10 Wend. 116; *McLean v. La Fayette Bank*, 3 McLean, 601); that the evidence in this case was conclusive against the usurious intent; and that, in particular, any such intent was conclusively negatived by the fact that *Barnes*, by the terms of the bond, *had the option to make his payments either at the Troy City Bank, or at Racine, with exchange on Troy.* In reference to the decision of Judge MILLER, cited by defendant's counsel, they stated that in that case the money when advanced was

in Milwaukee; that it was to be repaid absolutely at the Marine Bank, in Milwaukee, with the highest rate of interest, and one per cent. added, and without any option of the borrower to pay at Boston, where the lender resided; and that there was no proof on the first trial of the reason for making the note payable in that manner; but that a motion was made for a new trial in that case, and that upon its being shown that the note was made payable in Milwaukee, with exchange added, for the accommodation of the maker, and that exchange was not required as extra interest or compensation for the use of the money, a new trial was granted; and that, upon such new trial, the note was held not usurious, and the plaintiff recovered.

The motion for a re-hearing was denied.